### ELI STILSON v. CHARLES GIBBS.

*Trover for unlawful levy—Justification—Custody of property—Exemption from execution.*

A deputy sheriff having levied upon wheat in the mow, threshed and removed it before selling it, and in an action of trespass on the case for unlawful seizure and sale sought to justify by showing that when he had levied on a former crop under the same judgment, the defendant had removed it in the night.    But as it appeared on cross-examination that it was removed by the holder of a chattel mortgage thereon it was *held* that the justification, if it was one, failed and that the evidence should have been stricken out.

Placing a keeper in charge of property under levy is a sufficient precaution for its protection unless violence is apprehended.

Seed wheat being necessary to the business of wheat farming is material which, within the limits defined by Comp. L., § 6101, is exempted from execution against the farmer.

Error to Kalamazoo. Submitted Apr. 15. Decided June 15.

CASE.   Plaintiff brings error.   Reversed.

*Edwards & Sherwood* for plaintiff in error.

*Arthur Brown* for defendant in error.   An officer's wrongful act in making a levy does not divest the owner of his property nor prevent its being applied in payment of the execution, and when so applied the amount mitigates the damage of the wrongful taking : *Montgomery v. Wilson* 48 Vt. 616 ; *Collins v. Merriam* 31 Vt. 622 ; *Briggs v. Gleason* 29 Vt. 78 ; *Stewart v. Martin* 16 Vt. 402 ; *Lamb v. Day* 8 Vt. 407 ; *Board v. Head* 3 Dana 494 ; *Squire v. Hollenbeck* 9 Pick. 551 ; *Pierce v. Benjamin* 14 Pick. 356.

COOLEY, J.   This case was once before in this court, and the decision is reported in 40 Mich. 42.   The action was trespass on the case for the unlawful seizure and sale of a mow of wheat belonging to the plaintiff.   The defendant justified as sheriff under an execution issued on a judgment in favor of one Sebring.   After making the levy the deputy of defendant had proceeded to thresh the wheat in disregard of the plaintiff's remonstrance, and had then removed it to a village several miles off before selling it. This he claimed a right to do in his discretion, but this court held that no such general right existed, and that if the officer claimed that there were special facts which made such a proceeding proper, the burden was upon him to prove them.   On a second trial the officer has undertaken to make such proof, and in the opinion of the jury he seems to have succeeded.

If there were any facts in proof which fairly tended to a justification for the threshing, we must accept the conclusion of the jury as final.   From the record it seems that such showing as was made came from one Stringham, who was deputy sheriff of the same county and had an execution on the same judgment four years earlier.   His testimony was as follows :

"I was up there [at Stilson's] and levied on a lot of wheat. I had permission to put it in this granary. He turned out his granary to put it into. He wished me to leave it there until he could replevy. He was going to replevy, he said, immediately. The wheat was in two places. Got it together in the granary. He turned me out the granary and the lock and key to lock it up with. He said I could have it in welcome, and when he got the replevy, why of course that would be sufficient; that would settle the matter. I locked it up, took the key and went home. That night about 11 o'clock I was notified he was running the wheat off. I lived in Augusta then, about 3½ miles from him. I went up there and found that that was the case, and part of it was gone. I went in and took possession of what was left. I think I saw him. He had a number of men at work for him—two teams I think there were drawing wheat for him—drawing it off. I don't remember whether I had any controversy with Stilson himself about the wheat or not. I know I did with some of his men. I think he was in the barn or about the barn there."

This apparently makes out a somewhat strong case of making away with the property levied upon, but not much is left of it after the cross-examination. "I knew," he says, "there was a chattel mortgage on this same wheat when I made this levy. I presume Stilson told me of the mortgage when I made the levy. I think it was a man by the name of Woodworth who had the mortgage. I think he lived in Calhoun county. That wheat was in two different parcels a mile apart. I helped move one parcel to the barn where the other was the same day I made the levy. I locked it up in the granary. Stilson made no objection to my taking it and putting it in there. I think he furnished me with the lock. I did not leave the wheat in his possession there. He told me that it would be perfectly safe. I think Stilson gave me the mortgage, and told me Mr. Woodworth wanted me to file it. I don't remember Mr. Stilson told me that I ought to notify Mr. Woodworth—think he did not. I won't say that he did not—I don't remember. He said if I did not notify Woodworth he would. I would not say he did not or did. Mr. Woodworth met me there at the barn about the wheat. It was after I had taken one load to Augusta, and about eleven or twelve o'clock that night that he met me. He claimed to own this wheat. When I went back there quite a pile of the wheat had been taken away. Mr. Woodworth seemed to be interested in the matter of

taking it away ; seemed to be giving directions there. I did not know the man who was taking it away. Woodworth forbid my touching it. I think Stilson did not forbid me. Woodworth seemed to be exercising control over the wheat. I was there perhaps two hours at that time. I took away part of the wheat and Woodworth replevied it from me." " I can't swear positively that I spoke to Stilson that night. The conversation was principally with Woodworth. There were several men there. I don't know of Stilson ever making an effort to move that wheat. Don't think he ever said he would move a kernel of it. Don't think he ever said anything on that subject, except that he would replevy, or that Mr. Woodworth would replevy it. Mr. Stilson did not object to my levying on the wheat, nor to my putting it in the barn. I don't say he said he would replevy it."

We are not prepared to say that if it had appeared that the defendant in the execution had in one case secretly removed from the custody of the officer threshed wheat which the latter had levied upon, this would have justified another officer several years afterwards in assuming that he would do the same with wheat in the mow, and in thereupon taking the extraordinary step of threshing it before a sale, as the proper and suitable means of precluding a clandestine removal. It would naturally occur to most officers, we think, that the proper means of protecting property levied upon would be to put a keeper in charge ; and unless violence was apprehended, this must be deemed a sufficient precaution. But in this case the attempt to show that Stilson removed the wheat levied upon by Stringham failed utterly. The showing to that effect which Stringham seemed to make on his direct examination was wholly refuted on the cross-examination, and nothing was left of it to submit to the jury. The judge should have stricken out the evidence when the plaintiff made a motion to that effect.

An error was also committed in respect to a claim to exemption made by the plaintiff. He was entitled under the statute to hold as exempt provisions for the comfortable subsistence of his family for six months ; and the officer insists that he left sufficient wheat for that purpose. But

the statute also exempts " the tools, implements, materials, stock, apparatus, team, vehicle, horses, harness, or other things, to enable any person to carry on the profession, trade, occupation, or business in which he is wholly or principally engaged, not exceeding in value two hundred and fifty dollars"—and the plaintiff claimed a right to show that he had prepared ground for sowing wheat, and sufficient was not left him for seed. Seed is unquestionably necessary to enable one to carry on the business of farming; and his seed wheat may therefore be included by the farmer in making up the $250 which the statute exempts for him as stock in business. The judge should have received the evidence.

The judgment is reversed with costs, and a new trial ordered.

The other Justices concurred.