## Timothy O'Donnell and another v. George Segar.

*Replevin: Exemptions: Team: Evidence.* It is incumbent on a plaintiff in replevin, who seeks to hold a yoke of oxen as exempt from execution under our statute (*Comp. L.*, *1857*, § *4465, sub. 8*) to show: 1. That he owns, or is entitled to the possession of the oxen; 2. That he is engaged in some kind of business or employment which calls for the use of a team, or yoke of oxen; and 3. That he had no other team, or, perhaps, none which, together with this, exceeds in value $250; or, if they do, that he had taken the proper course to select these oxen, or that he has been wrongfully prevented from making such selection.

*Evidence: Cross examination.* A defendant, on cross examination of a witness for the plaintiff, has a right to put any question calculated not only to test his credibility and the extent and means of his knowledge, but to draw out any fact which might tend either to contradict, weaken, or explain any one of the particular statements made by the witness, or to weaken any inference from the whole or any part of his testimony in chief, in support of either of the main facts essential to the plaintiff's case.

*Property exempt from execution.* The mere fact that one having exempt property offers it for sale, will not deprive him of the exemptions; but if he buys it, and holds it, rather for sale or speculation than for the particular use which alone exempts it, and it is not, in fact, needed or kept for such use, it is not exempt.

*Cross examination.* Upon cross examination, a question calculated to draw out a fact which may be rendered material by further evidence, is competent; and the same rule does not apply as upon direct examination, that, if the question can only be shown to be relevant by other evidence intended to be offered, it must be accompanied by an offer to introduce such other evidence.

It is erroneous to reject questions on cross examination, which relate to the same subject as the direct examination, even though it be not apparent that the answers would have benefited the party putting the questions, unless it clearly appears affirmatively that such party could not be injured by the rejection; and this error is not cured by allowing such party to go fully into the same matters with his own witnesses.

O'DONNELL *v.* SEGAR.

*Exempt property: Team: Occupation: Time.* ·In an action of replevin for a yoke of oxen, claimed as exempt from execution under the statute, the question of the occupation of the plaintiff, relates only to the time of, and previous to, the taking; and his occupation at any subsequent time is immaterial.

It is also immaterial in such action, whether the plaintiff, at any time subsequent to such taking, had another team which he claimed as exempt, or had recovered a judgment for another team on the ground that they were exempt.

*Exempt property: Selling property not exempt to purchase that which is exempt: Fraud.* The questions whether the plaintiff had sold other property to bring himself down to the exemptions, or whether he sold any property during the· winter prior to the taking of the oxen in question, to avoid paying his debts if material at all, are matters of defense purely, and in the nature of a confession and avoidance; and they are not competent on cross examination of a witness who has testified simply to the plaintiff's occupation, and that he had no other team, because they have no tendency to controvert the facts elicited by the direct examination.

But even if the plaintiff had disposed of all the property he had which was subject to execution, for the very purpose of investing the proceeds in, or converting them into, that kind of property which was exempt under the statute, it would not deprive him of the exemption, so long as his occupation is really such as the statute requires, and the particular property is needed in that occupation; nor would it constitute legal fraud.

*Charge to the jury: Fraud: Evidence.* A charge to the jury, that they cannot infer fraud, and that fraud cannot rest upon implication, is erroneous. There is no such standard of evidence of fraud; it is, like any other fact, to be proved by any facts or circumstances which satisfy the mind of its existence; it may be, and generally is, inferred from circumstances, and cannot often be proved in any other way.

*Exempt team: Removal out of the state.* In the absence of any evidence tending to show that the plaintiff was about to remove from the state to resume the business of farming elsewhere, it was error to refuse to charge, as requested by the defendants, "that, if the plaintiff had no business in this state, and was merely awaiting the sale of the property in question, intending then to remove out of the state, he is not entitled to hold the property as a team, under the statute."

*Exempt team: Moving within the state.* One who is actually engaged in farming up to the time of his moving, does not lose his right of exemption of a team under the statute while moving from one farm in this state to another to resume the same occupation.

Whether the right would be the same if moving to another state to resume farming there :—*Quaere ?*

*Written charge: Oral explanations.* Where the record discloses that the circuit judge made oral explanations of his written charge, and states at length what was said, and it appears that it could not, and did not, modify the effect of any·of the written charge, this will not be treated as error.

But where the record recites that "the court otherwise orally explained some of the written charges given, but in no way changed or modified their legal effect," without stating what the oral explanations were, this is error under our statute (*Sess. L. 1869, p. 114*) requiring the charge to be in writing, and providing that the court shall in no case orally qualify, modify, or in any manner explain, the written charge.

*Heard April 20.    Decided July 13.*

Error to St. Clair Circuit.

*A. E. Chadwick* and *Trowbridge & Atkinson*, for plaintiffs in error.

*B. C. Farrand* and *E. W. Meddaugh*, for defendant in error.

CHRISTIANCY, CH. J.

This was an action of replevin brought by Segar, the defendant in error, in the circuit court for the county of St. Clair, for a yoke of oxen which had been seized by Spencer, a constable, under a writ of attachment issued by a justice of the peace, at the suit of O'Donnell, against Segar and one Arthur Smith, April 6, 1870. Judgment was obtained in the attachment suit, and the oxen sold upon the execution issued in that suit. [The record does not show how Spencer and O'Donnell obtained, or held the possession of the property after the sale, so as to render them jointly liable to replevin, but no error is assigned upon this ground.] Spencer acted under the direction of O'Donnell in seizing and selling the property. The defendants justified under the attachment and execution, and the plaintiff (defendant in error) claimed that the oxen were exempt from attachment and sale, under *subdivision 8 of § 4465, Comp. L. of 1857,* which exempts from such attachment and sale, "The tools, implements, materials, stock, apparatus, team, vehicle, horses, harness, or other things to enable any person to carry on the profession, trade, occupation or business, in which he is wholly or principally engaged, not exceeding in value two hundred and fifty dollars."

A previous attachment had been obtained by O'Donnell, against the same parties, on which the oxen were taken, and a previous replevin suit commenced by Segar, against the constable who took the oxen, and his assistant, upon

25 MICH.—47.

which the oxen were not found or taken; and, though some errors are assigned in reference to the previous replevin suit, they were not insisted upon on the argument, and will not be noticed; nor shall we notice any of the errors assigned, except those urged upon the argument.

Segar, having obtained the property on the writ of replevin in the present cause, recovered a judgment for damages and costs, and the case comes to this court upon a writ of error and bill of exceptions.

The particular subdivision of the statute under which the exemption was claimed by the plaintiff, makes the exemption depend upon the profession, trade, occupation, or business, in which the party is wholly or principally engaged, and his need of the property in the exercise of that profession, trade, occupation, or business; differing in this respect from most of the other subdivisions of the section, which relate to specific exemptions, some confined to householders, and some applicable to all persons alike. The question of exemption depends on the state of facts existing on the 6th of April, when the cattle were taken on the second attachment; but the plaintiff's evidence all related to the 28th of March, when they were taken on the first attachment. No objection seems to have been taken to this; and, as the difference in time was only nine days, it is not very material, unless it should be shown that the state of facts was essentially different at the last named period.

It was incumbent upon the plaintiff to show, 1st. That he owned or was entitled to the possession of the oxen; 2d. That he was engaged in some kind of business or employment which called for the use of a team, or yoke of oxen; and, 3d. That he had no other team,—or, perhaps, none which together with this would exceed in value two hundred and fifty dollars, or if they did, that he had taken

the proper course to select these oxen, or that he had been wrongfully prevented from making such selection.    See *Comp. L., 1857*, §§ *4466 to 4468.*

Testimony was given on the part of the plaintiff, tending to establish each of these points.    The testimony of George Bean, a witness for the plaintiff, on his direct examination, tended to establish the first two; but in reference to the plaintiff's occupation, his testimony was, that plaintiff was a farmer, and in winter a lumberman; but in what division or department of the lumbering business he had been engaged in the winter season,—whether in cutting logs, running or sawing them, or in piling lumber, none of which required the use of a team, or in drawing it, which would require a team—did not appear.

The defendants had a clear right, on cross-examination of this witness, to put any question calculated, not only to test his credibility and the extent and means of his knowledge, but to draw out any fact which might tend either to contradict, weaken, or explain any one of the particular statements made by the witness, or to weaken any inference from the whole or any part of his testimony in chief, in support of either of the main facts essential to the plaintiff's case.    And since, if a question on cross-examination relates to the subject to which the direct examination related (by which I mean, not only the particular facts stated in the direct examination, but any thing tending to establish the main or resultant facts essential to the plaintiff's case), the court cannot usually say, before the question is answered, whether the answer will elicit any thing tending to contradict, weaken, or explain any of the facts, or the inference from any of the facts, stated in the direct examination, or to test the credibility or the extent or means of knowledge of the witness, the only safe general

rule upon cross-examination, is, to allow the party cross-examining, to go over the whole subject, or subjects, to which the direct examination related, and to give him the chance to draw out, as far as he may be able, any fact, which, within the principles and for the purposes above explained, he has the right to elicit on cross-examination. It is quite possible that questions may be put upon cross-examination, though relating to the subject of the direct examination, the answers to which, if responsive, the court may be able to see, could have no bearing, and serve no legitimate purpose, whichever way the answer might be; and then there would be no error in rejecting the question. But this cannot often happen; and courts should be very cautious in overruling questions on cross examination upon this ground, since it frequently happens that a cross-examination can be rendered effectual only by first calling out some fact apparently of little or no importance, and then making the answer the basis of other questions, or the test of other answers, which may finally result in exposing falsehood, or drawing out other facts which may greatly weaken or modify the effect of the testimony in chief. The witness, on his cross-examination, had already testified that Segar had formerly been a farmer near Memphis, which farm he sold out in order to pay for it; that he had lived in the house on the Partridge place about two months; that Partridge sold the place in May; that Segar worked on the witness's place (without saying when); that plaintiff held the cattle for sale at the time when taken by Smith and Dayton (meaning on the first attachment, in March), and that Segar bought the oxen in February.

He was then further asked, on the same cross-examination, the following questions, all of which were

objected to by the plaintiff, and excluded by the court, viz:

"Did he hold the cattle for sale from the time he got them until he sold them?"

"Had he at that time (referring to February, when he bought the oxen) sold his farm?"

And the witness having then proceeded to state, that plaintiff's family went to Missouri about two months after the cattle were taken by Smith and Dayton (which would make the time about the 6th of June); that soon after plaintiff recovered the oxen (meaning on the writ in the present case), which was about the middle of August, and that he sold them to the witness, and soon after went to Missouri; he was then further asked: "Do you know whether plaintiff had any other team during the winter?" This, also, was overruled. Doubtless, a man having exempt property may sell it, and the mere fact that he offers it for sale will not deprive him of the exemption. But if he buys it, and holds it, rather for sale or speculation than for the particular use which alone exempted it, and it is not, in fact, needed or kept for such use, it would not be exempt.

The first question overruled had some, though not a very direct, bearing upon the question, for what purpose he had bought and held the oxen,—whether for the purpose of speculation, or because he needed them in any occupation or business in which he was engaged,—and the second, upon the question, whether he was a farmer,—which was a main fact in the case,—as the evidence tending to show that he was a lumberman in the winter, did not, without explanation, show that he was, even in the winter, engaged in that kind of lumbering business which called for the use of a team. The answer to the third question, also, might have been very material, though it related to the

winter preceding the time when the oxen were taken; since, if he had another team during the winter, defendants were entitled to follow up the inquiry, and to show what became of it, and that it was still really his, and that the oxen were not, therefore, exempt; at least, it might, by further evidence, have been rendered material. And upon a cross-examination, for the reasons already given, the same rule does not apply as upon the direct, that, if the question can only be shown to be relevant by other evidence intended to be offered, it must be accompanied by an offer to introduce the evidence in connection with which it would become relevant; as this might destroy the efficacy of a cross-examination, by informing the witness of what its object is. And though we may not be able to see that the answers could have benefited defendants, or that they were actually injured by the rejection of these questions, yet, as they related to the same subject as the direct examination, and were therefore *prima facie* admissible, and we cannot affirmatively say, that they would not have elicited evidence material to the defense, nor, therefore, that the defendants were *not* injured by the rejection, we must treat the rejection of these questions as erroneous. And the error was not cured by allowing the defendants to go fully into the same matters with their own witnesses. They had a right to a full cross-examination, and cannot, for that purpose, be compelled to make the witness their own.

Cross-examination is the great test of the knowledge, as well as of the veracity of witnesses. The right to pursue it may sometimes be abused; and when it is sought to be abused,—as when counsel insists upon going over the same ground again and again, or when it is apparent that the witness has already fully answered without any appearance of evasion, and it is evident the counsel is merely pushing the witness for sake of annoyance, or for any illegitimate

purpose,—it is competent for the court, in its discretion, to put an end to it. But we see no evidence of any attempt at such abuse in this case.

For like reasons to those already given, we think the court erred in not allowing defendants to ask John Bean (another of plaintiff's witnesses), on a cross-examination, whether, at the time the oxen were taken from plaintiff, he had any farm "in this county or this state."

The defendants had the right to go fully into the question of the plaintiff's occupation. It was not necessary to have owned a farm to entitle him to the exemption. If he had hired, or was carrying on, the farm of any other person, it would be the same upon the question of exemption; and an answer to the question, stating that plaintiff was carrying on a farm for another person, would have been clearly responsive.

But there was no error in rejecting the question to John Bean, what the plaintiff had been doing since the oxen were taken. It was his occupation *at the time* of, and *previous to,* the taking, which was alone in question.

Nor was there any error in refusing to allow the defendants to ask Dutton, their own witness, whether the plaintiff, about two months before the commencement of this suit, had not recovered a judgment for another team, on the ground that they were exempt. These cattle were taken on this attachment on the 6th of April. This suit in replevin was commenced, August 16. It *was* important to ascertain whether, at the time these oxen were taken (April 6), plaintiff had another team, but wholly unimportant what team he might have had since; and we cannot see how the fact of his recovering a judgment two months before (which would be about June 16), without any statement for what taking the suit was brought, or when, could have any legitimate bearing upon the case·

O'DONNELL v. SEGAR.

If it could (this being an examination of their own witness), its bearing should have been shown, and with what other evidence to ·render it pertinent, it was proposed to follow it up.

Nor do I think there was any error in rejecting the defendant's questions to the witness George Bean, on cross examination, whether he knew of plaintiff's selling other property to bring himself down to the exemptions; or whether he knew of plaintiff's selling any property during the winter to avoid paying his debts.

1st. On the hypothesis that this would deprive the plaintiff of the exemption in question.    I think, as suggested by the court, it was matter of defense purely, and in the nature of a confession and avoidance, and in any logical system of pleading, should have been so alleged, since it goes upon the ground, that, even admitting the plaintiff was engaged in the business which would exempt the team, and that he had no other, still, on account of the fraud in purposely selling other property, and reducing himself to exempt property only, it would not be exempt. This would have no tendency to controvert the facts of the plaintiff's occupation, or that he had no other team, which facts the direct testimony had tended to show.

But, 2d. Notwithstanding the authorities cited (*Brackett v. Watkins, 21 Wend., 68*, and *Grimes v. Bryne, 2 Min., 89 to 104*), I am at a loss to perceive how the plaintiff could have been deprived of the statute exemption by clear proof that he had purposely disposed of all the property he had which was subject to execution, for the purpose of investing the proceeds in, or converting them into, that kind of property which was exempt under the statute.    The statute has made this particular exemption depend upon the occupation of the owner, and the fact, whether that occupation was such as to render the property needful to that

occupation. Now, so long as the occupation is really such as the statute requires, and the particular property is needed in that occupation, it seems to me it is exempt under the statute; and that the facts proposed to be shown by these questions, would have no tendency to show that the occupation was not really such as supposed, nor that the property was not needed in carrying it on.

When the statute exempts from execution certain kinds of property to certain amounts, without any exception or qualification on the ground here urged, I can see no intelligible ground on which it can be held fraudulent for any man whose property does not, in the aggregate, exceed the aggregate value of all the exemptions, but part of which, in its present shape, is not exempt, to convert or exchange it into those particular kinds of property which are exempt. If the aggregate of his property is more in value than the aggregate of all the exemptions, it would not be possible to convert or change the whole of it into exempt property; and if he has fraudulently conveyed or disposed of any of it in some other way, such fraudulent conveyance or disposition may be void for such fraud, and a levy might be made upon it, treating the fraudulent conveyance as void, or he may be proceeded against under the fraudulent debtor, or non-imprisonment, act; but no such question arises here. The only fraud claimed to have existed in reference to the oxen, was, that he might fraudulently have acquired them from the proceeds or exchange of other property which was not exempt, and this, with the intent to defeat the claims of creditors. This, in my opinion, if true, does not constitute legal fraud, so long as he was, *in fact*, engaged in one of the occupations mentioned by the statute, as his principal occupation, in which the use of the cattle was needed. The statute, in attaching the exemption to the business or employment, must, it seems to

me, be held to allow any man to abandon any kind of business in which the exemption was not allowed, and to adopt one to which the exemption is attached, and to take the benefit of the exemption, without being chargeable with fraud in so doing, even though he has made the change of employment for the very reason, that he will thus be able to retain property which otherwise would not be exempt, if he adopt it in *fact* and *reality*, as that in which he chiefly relies for a livelihood, and not as a mere pretense or sham. There may be a moral wrong in thus keeping property from creditors, but if so, it is one which the statute, on grounds of public policy, and to prevent distressing families, has sanctioned, in allowing the exemption, and therefore is not legally a fraud.

There was no question of fraud, properly involved in the case, except so far as there was a question, whether plaintiff was really engaged in farming, or merely assumed or pretended to be, for the purpose of holding the property; and none of the requests, or any part of the charge, relating to any other fraud, need further to be noticed, except to say, that, when the question *is* involved, there is no such standard of evidence of fraud, as that assumed by the court. The jury were told they could not infer fraud, and that it could not rest upon implication. We know of no such rule of evidence in reference to the question of fraud; it is, like any other fact, to be proved by any facts and circumstances which satisfy the mind of its existence, and may be, and generally is (when found), inferred from circumstances, and cannot often be proved in any other way.

It is urged as error, that the court refused to charge (as requested by defendants' fifth request), that if the plaintiff had no business in this state, and was merely awaiting the sale of the property in question, intending then to remove out of the state, he is not entitled to hold the

property as a team, under the statute.    Had there been any evidence in the case tending to show that the plaintiff was about to remove from the state to resume the business of farming elsewhere, I am by no means prepared to admit the correctness of the proposition contained in this request.    As remarked by the court in his charge, "To keep the property in use, it is not necessary it should be in use all the time," and, "to say that a man in the act of moving, and on the highway, ceases to be a farmer, and that he may be deprived of his teams, his bed, or his cow, on execution, because he is not in the actual cultivation of the farm" (if by this was meant, that he was actually a farmer, up to the time he started, and was going onto another farm in this state to resume the same occupation), "would be a perversion of the statute."    Whether the right would be the same if moving to another state, to resume farming there, is a question not strictly involved in the case; and though I am inclined to think the party's right to the exemption would be the same as if intending to move onto another farm in this state, I express no definite opinion upon this question.    It was in assuming that there was evidence tending to show that he was removing, or about to remove, to Missouri, *with intention to resume the farming business there,* that the court erred, as there was no such evidence.    The loose inference of this, from the mere fact that he had been engaged in farming here, would hardly be sufficient, and there being no such evidence, the fifth request of defendants should have been granted.

It is further assigned for error, that the judge, after reading his written charge to the jury, "orally explained the same or some part of it to the jury," in violation of section four of the act of 1869 (*Sess. L., 1869, p. 114*).    Upon

this, the judge returns in the bill of exceptions, as fol-lows :

"And the said circuit judge, in answer to some remarks of counsel, and in explanation of his written charge, said orally to said jury, that the bringing of a suit for exempt property, or claiming it as exempt, was justified by law, and must be so regarded by the jury as well as the courts.

"And in response, the *court otherwise orally explained some* of the written charges given, but in no way changed or modified their legal effect."

As to the first paragraph above quoted, and which shows just what was said, we can readily see that it was the expression of a mere legal truism, which could not, and did not, modify the effect of any of the charge given, and consequently cannot be treated as error.

But the second paragraph shows that he "otherwise explained orally some of the written charges" without stat-ing how; and we cannot, therefore, see or judicially determine, that the oral explanation did not "change or modify" the legal effect of any of the charge. And if we were to take his judgment upon the effect of the explana-tion, we should defeat the very object of the act in ques-tion, which declares, that "the court shall in no case orally qualify, modify, or in any manner explain, the written charge." The very object of this statute was, to enable parties to get before this court for review upon exceptions, the charge exactly as it was given to the jury, and that the whole of it should, therefore, be in writing.

Whatever doubt may be entertained, as to the propriety of this provision, there can be none that, while it remains, its observance must be enforced according to its clear pur-pose and intent. The explanation, therefore, the nature of it not being given so as to enable us to judge whether it

could possibly have prejudiced the parties, must be held erroneous.

The judgment must be reversed, with costs, and a new trial awarded.

CAMPBELL and COOLEY, JJ., concurred.

GRAVES, J., did not sit in this case.