|105    237
|141    ¹502

## HOMER L. BOYLE v. WILLIAM P. WALSH.

*Findings of fact—Review on appeal—Exemptions—Horse and buggy.*

1. Findings of fact which are supported by evidence are not open to review.

2. A horse and buggy purchased by a person engaged in the business of an inventor, and in selling machines made under his inventions, for speculative purposes only, and not necessary in his business, and held by him for the purposes of sale, are not exempt under How. Stat. § 7686, subd. 8, from levy and sale on execution.[1]

Error to Kent. (Grove, J.) Submitted on briefs May 3, 1895. Decided May 21, 1895.

Replevin. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Richard L. Newnham,* for appellant.

*Dunham & Preston,* for defendant.

HOOKER, J. The plaintiff appeals from an adverse judgment in a case of replevin from an officer of a horse, buggy, and harness, which the defendant held upon a levy of execution issued against the plaintiff, which property plaintiff claims to have been exempt from levy and sale on execution. The cause was tried before the circuit judge, who filed a written finding of fact that the property belonged to the plaintiff, was worth $200, and was not exempt from execution, levy, and sale, because it was purchased by the plaintiff for speculative purposes only, in exchange for patent-right territory, and was not necessary in his business, and was held by him for the

---

[1] See note at end of opinion.

purposes of sale. Plaintiff's brief states that the sole question is as to whether a person engaged in the business of inventor and selling machines, etc., can be allowed to have a horse and buggy in order to carry on such business, and, if so, whether the plaintiff's business was such as to entitle him to such exemption under the eighth subdivision of How. Stat. § 7686.

There is no doubt that a man might be engaged in a business of inventing and selling machines, and use, and perhaps require, a horse and buggy to enable him to carry on such business; and if he in good faith kept and used such property in the business, and it was the business in which he was wholly or principally engaged, he would be lawfully entitled to the exemption. But this involves several prerequisite facts, and the court has found against the plaintiff in relation to them. An examination of the record satisfies us that his finding is supported by evidence, and it is not open to review by us. His finding is conclusive, and is sufficient to support the judgment.

This being the only question discussed by the brief of the plaintiff, we need only add that the judgment must be affirmed.

The other Justices concurred.

---

EXEMPTION OF PROPERTY TO ENABLE ANY PERSON TO CARRY ON THE BUSINESS IN WHICH HE IS WHOLLY OR PRINCIPALLY ENGAGED.

For cases bearing upon the construction of and proper practice under How. Stat. § 7686, subd. 8, which, as limited in its operation. by 3 How. Stat. § 7716, provides for the exemption from levy and sale under an execution (except where issued upon a judgment rendered for the purchase price of the same property) of the tools, implements, materials, stock, apparatus, team (construed by How. Stat. § 7715, to mean either one yoke of oxen, a horse, or a pair of horses, as the case may be), vehicle, horses, harness, or other things to enable any person to carry on the profession, trade, occupation, or business in which he is wholly or principally engaged, not exceeding in value $250, see:

GENERAL RULES APPLICABLE TO THE SUBJECT.

1. *Smalley v. Masten*, 8 Mich. 529, holding that the words "prin-

cipally engaged," as used in the statute, are not to be construed
with reference to the productiveness or profit of one kind of busi-
ness over another, where two or more occupations are followed
at the same time, but with reference to the occupation or business
on which the party chiefly relies for a livelihood, and which
engrosses the most of his time and attention, not for a day, or
week, or month, but throughout the year.

2. *Kenyon v. Baker*, 16 Mich. 373, holding:

a—That it is a somewhat too narrow construction of the statute
to confine it to articles absolutely necessary to carry on the busi-
ness; that it can rarely happen that ordinary business may not be
carried on by various means, while it may be done more
thoroughly or conveniently by articles which may nevertheless
be dispensed with if not attainable; that it is not the design of
the statute to be overnice or technical in this regard; that abuse
of the right is checked by limiting the amount in value which
may be exempted; that if a person actually uses certain things
"to enable" him to carry on his business, and such things are
reasonably adapted to aid him in doing so, such adaptation and
actual use are sufficient to authorize the articles to be exempt,
as enabling him to do business.

b—That it is not a fair application of the law to allow an
exemption only when a person has some one engrossing pursuit
to which he devotes the great bulk of his time; that if a man
carries on two entirely separate kinds of business, and the articles
which enable him to do one kind are not used or serviceable in
the other, the statute is plain enough that a thing claimed to be
exempt must relate to his principal business, but, if it happened
to be material and useful in both, it would be very strange if it
could be exempt in neither.

3. *O'Donnell v. Segar*, 25 Mich. 367, holding that the mere fact
that one having property exempt under the statute offers it for
sale will not deprive him of his exemption, but if he buys and
holds it rather for sale or speculation than for the particular use
which alone exempts it, and it is not, in fact, needed or kept for
such use, it will not be exempt.

4. *Harris v. Haynes*, 30 Mich. 140, holding that the object of the
exemption is to encourage men who may have become unfort-
unate, by preventing them from being deprived of the means of
making an honest living; that it contemplates that, at the time
when the necessity for an exemption arises, they will be subject
to a loss of all that is not exempt, and in many, if not in most,
cases, this must be equivalent to at least a temporary stoppage
of business; that in the case of farmers, whose work is done upon
land, the homestead exemption, added to that of their teams and

implements, will prevent a breaking up, but in other business it is probable, and often inevitable, that until, from lapse of time or from other facts, it is apparent that a person has relinquished his former occupation, after he has retained his exempted tools, the presumptions must be in his favor.

5. *Stewart v. Welton*, 32 Mich. 56, 59, holding that it is not necessary that the property should in all cases be used, in the strict sense, by the debtor in his principal business in order to be exempt; that user would undoubtedly be a proper test in some cases, as in *O'Donnell v. Segar*, 25 Mich. 367, but there are cases: where a direct use of the property in the principal business could not be held necessary without defeating the entire object and purpose of the statute; but that, if the property is purchased and kept for sale for the mere purpose of speculation, it will not be exempt.

6. *Wood v. Bresnahan*, 63 Mich. 614, holding that the requisites necessary to bring a debtor within the exemption privilege are that he shall be a citizen of this State, and that the property shall fall within some of the provisions of the statute.

7. *Fischer v. McIntyre*, 66 Mich. 681, holding that where the facts from which to determine, as a question of law, whether certain property is exempt from execution are undisputed, the question need not be submitted to the jury.

### ILLUSTRATIVE CASES.

For cases applying the statute to a given state of facts, see:

#### Principal Business.

*Smalley v. Masten*, 8 Mich. 529, where plaintiff replevied a span of horses and a wagon, which the defendant, as sheriff, had levied upon. The plaintiff claimed the same as exempt to enable him to carry on the business of farming. On the trial it was shown that plaintiff carried on a farm, and was also engaged in business as a tailor. And it was held:

*a*—That it was error to allow the plaintiff to prove which of his two occupations would be likely to bring him in the most; that a new business, embarked in as an experiment merely, might temporarily produce more, and require more personal attention, than the old, and yet the latter be one's principal occupation, because most relied on or looked to for a livelihood, and the one that would be held onto if compelled to abandon either.

*b*—That the court did not err in refusing to charge the jury, upon the request of the defendant, that, if the plaintiff gave his principal time and attention to the business of tailoring, the property replevied would not be exempt, and in charging them that it

was proper to consider the amount or extent of the different kinds of business in which plaintiff was engaged, as well as his personal labor; that personal labor was not a positive or absolute test of the business in which plaintiff was principally engaged, but was a circumstance to be left to the jury for their consideration.

### Removal of Debtor.

*McHugh v. Curtis,* 48 Mich. 262, holding that a resident of Michigan, who removes' to and becomes a resident of a foreign country, thereby loses the benefit of the statute as to any property which may afterwards be found in this State.

### Removal of Property.

*Wood v. Bresnahan,* 63 Mich. 614, where a debtor, who for some years had been engaged in the manufacture of lumber and shingles in this State, quit the business, and commenced to remove the engine and machinery from the mill to the railway station preparatory to its shipment to Washington territory, where he proposed to use it in the same kind of business. While yet a resident of this State, the engine and machinery were attached by one of his creditors. And it was held that the property had not lost its exempt character, and that so long as the debtor remained a resident of this State he would be entitled to claim his exemption therein.

### When Married Woman may claim Exemption or an Interest Therein.

1. *McHugh v. Curtis,* 48 Mich. 262, holding that a married woman, who supports her family or contributes to their support by the employment of a team owned by her, has the same privilege to hold it exempt from execution that any man would have under similar circumstances.

2. *Charpentier v. Bresnahan,* 62 Mich. 360, where, upon the levy of an execution upon an entire stock of goods, the judgment debtor, without the knowledge or consent of his wife, released his exemption in the goods, after which both replevied a portion of the goods, upon the theory that the husband could not waive his exemption without the consent of his wife. · And it was held that, under the statute, the exemption is beyond the interference of the wife; that its use and disposition are vested solely in the husband, who may release it to an execution creditor, which amounts to a sale to pay debts.

### What Property is Exempt.

1. *Wyckoff v. Wyllis,* 8 Mich. 48, where, in trover against a

105 Mich.—16.

sheriff, the court found that the defendant attached all of the personal property of the plaintiff, consisting of horses, wagon, and harness, which were necessary to enable him to carry on his business of peddling, and also his stock of goods used in that business, amounting together to $2,389.97. The horses were found to be worth $275, the wagon $180, and the harness $20. It was not found that any appraisal was made, or notice given to the defendant in attachment of the levy, or any selection made by the sheriff for him of any goods or property as exempt. And, on affirming a judgment in favor of the plaintiff for $250, it was held that there was no force in the objection that there could be no exemption under said finding of a team, a wagon, or harness separately, on the ground that all were found to be necessary, and not a part only; that the statute exempts any articles whatever necessary to enable a person to carry on the business in which he is principally engaged, so long as the articles set apart do not exceed in value $250; that the defendant, if he had been afforded the opportunity, might have selected that amount either in goods, or in such of his other property mentioned as he pleased; that he might have selected a single horse, or a wagon, as well as a double team with or without a wagon, and he might have preferred to save a small stock of merchandise, to carry on his peddling business on a lighter scale without a wagon.

2. *Kenyon v. Baker*, 16 Mich. 373, where a merchant, after engaging for several years in mercantile business, gave it up, without entering upon any other engrossing occupation, and was chiefly engaged in settling up his old matters, and doing a small amount of farming and improvement. He used a horse and wagon in doing his settlement business, which required some traveling about, and also in his home occupations. In replevin from an officer who had seized the property on execution, it was held that it is not necessary that the business in which a person is engaged be extensive, or occupy most of his time; that, whatever may be a person's avocations, and whether his business be light and allowing intervals, or heavy and unremitting, the business, such as it is, should be protected under the law; that no reason is seen why the occupation of time in settling old affairs should be considered as idleness or inactivity; that it is merely doing one of the most important parts of all commercial business, which is usually somewhat engrossing under a credit system, even when affairs are taking their ordinary course; that if a person devotes himself actively to such a closing up of affairs, and is obliged to go about in doing so, his vehicle, in actual use for that purpose, may fairly be regarded as

"enabling him to carry on his business," so long as that necessity continues; that plaintiff had a right to the exemption if the jury believed that he was using the horse and wagon in good faith in any actual business, if he had no other principal occupation to which they were not subservient.

3. *Maxon v. Perrott*, 17 Mich. 332, where, in replevin for a case of dental instruments used by a dentist in his business, which had been levied upon under an execution issued on a judgment for the purchase money thereof, the question presented was whether or not the instruments were covered by the term "mechanical tools," as used in How. Stat. § 7716, which, as originally enacted, provided that the property exempted in How. Stat. § 7686, subd. 8, excepting mechanical tools and implements of husbandry, should not be exempt from any execution issued upon a judgment rendered for the purchase price of the property. And it was held that, under any construction which could be reasonably given to the word "mechanical," as used in said section, the tools of a dentist must be included.

4. *Harris v. Haynes*, 30 Mich. 140, where a sheriff levied on certain tinner's tools and machines, which the execution debtor replevied as exempt. The debtor, who had been engaged in the hardware and tinning business, failed, and in January, 1873, made a general assignment for the benefit of his creditors, reserving therefrom as exempt the property in suit. The execution levy was made in the early part of May, 1873, and during the interim the tools remained in the old shop, which was separated from the hardware store by a partition. After the assignment, the debtor had access to the shop, and not to the store, and up to the time of the levy was not engaged in any business or occupation, except that for a day or two a man who had been in his employment was at work in the shop, and worked on another day afterwards. It did not appear that the debtor paid him anything, but he took away what he made, except one coffee-pot, which the debtor received. At some time or times in the interval, the debtor made about 50 pairs of blind-plates, which a good workman could have made in half a day. The debtor gave such attention as kept the tools and machinery in order, but did no further work. During his continuance in the hardware business, from April, 1872, to the time of the assignment, the debtor acquired his knowledge of the tinner's business, and devoted some personal attention to it, but bought no *stock*, and had made no arrangements for prosecuting the business when the levy was made. And, in reversing the holding of the circuit court that the property was not exempt, it was held that, at the time of the assignment, the property

was exempt; that the assignment at once put an end to the current business; that, being part of a hardware business, whatever checked that would naturally stop the other; that the very assertion of the exemption at that time, and the acceptance and action of the assignees, indicated an intention to regard the tinner's tools as necessary for the assignor's future occupation; that otherwise it would have been void; that the facts showed no design of giving up this purpose; that the debtor had gone into no other business, and it was not to be presumed that he meant to become an idler; that the fact that all he had done could have been done in a much shorter time by a good workman was of no account.

5. *Rosenthal v. Scott*, 41 Mich. 632, where a merchant, upon his stock being levied upon, selected therefrom his $250 exemption, and the goods selected were set apart to him. A few days afterwards the goods were seized under a justice's court execution, and were replevied by the merchant. On the trial the jury were instructed that unless the plaintiff, at the time of the second levy, was engaged in some business which required the goods for its prosecution, or had only temporarily suspended it, they were not exempt. And it was held that when the statute exempts a certain amount of the property to enable a person to carry on the business in which he is principally engaged, if that business is the selling of goods, the selection of a part of that stock is the simplest application of the law; that if the debtor is expected, out of the small amount exempted, to carry on the same business in the same place or in the same way as with a large stock, the law would be absurd, as it would also be if it required him to keep the property intact, or to go into business at once, or do any other thing which a man in his position cannot reasonably be expected to do; that the statute is designed to give him absolutely and unqualifiedly such a remnant or portion of the property used in his business as to enable him to get a new start, or to keep on in his old occupation, if it is such as to be available; that to hold that he cannot sell it, or keep it until a way opens for its profitable use, would be to destroy it altogether, and that to hold that a previous or subsequent purpose of making sale of it will forfeit it would be equally oppressive; that in the present case, the property exempt being goods designed for sale, there could be no possible ground for seizing them unless the owner had already gone into some new business in which they would be of no material use to him, which was not claimed.

6. *Hutchinson v. Roe*, 44 Mich. 389, where a carpenter and joiner was engaged in erecting a dwelling-house, on a lot owned by his wife, for their future home, they having no homestead elsewhere.

The husband owned a kit of tools worth $75, and a small quantity of shingles and building lumber, worth less than $100, which he was working into the house. He owned no other tools, stock, or material connected with his trade and business. While part of the shingles and lumber was lying on the lot, and the rest in the street in front of it, and after a portion of the lumber had been framed and fitted for use, the same was levied upon by one of his creditors. And it was held that the shingles and lumber were stock or material to enable the debtor to carry on his trade of carpenter and joiner, and as such exempt under the statute.

7. *Stilson v. Gibbs*, 46 Mich. 215, holding that seed is necessary to enable one to carry on the business of farming, and his seed wheat may therefore be included by the farmer in making up the $250 which the statute exempts for him as stock in business.

8. *Goozen v. Phillips*, 49 Mich. 7, holding that a saloon is supposed to be a place where persons who call for them are supplied with refreshments; and unless a pool table has a place among the tools, implements, stock, or apparatus necessary or convenient to be used in supplying such refreshments, which fact must be affirmatively shown, it is not exempt under the statute.

9. *Emerson v. Bacon*, 58 Mich. 526, where the owner of a horse, lightning-rod wagon, and harness, used by him in his business of selling and putting up lightning-rods, gave a bill of sale of the same to a creditor, whose debt was largely in excess of the value of the property. The creditor loaned the property to the debtor, and it was attached by another of the debtor's creditors while he was using it in his said business. The first creditor, who claimed that his bill of sale was absolute, replevied the property. On the trial there was some evidence tending to show that the plaintiff held the property as security for his debt. And it was held that, if the property belonged to the debtor, it was used in his business, and was exempt from execution, so that his creditors could not complain of any disposition he might make of it; that, this being so, plaintiff's right, whether absolute or as security, was such that the attachment could not prevail against it.

10. *Wood v. Bresnahan*, 63 Mich. 614, holding that the statute extends to all business, occupation, or employment in which a person may be wholly or even principally engaged, and covers an engine and machinery used in the manufacture of lumber and shingles.

11. *Fischer v. McIntyre*, 66 Mich. 681, where a tailor, who, prior to his marriage, carried on no shop, but worked by the piece at his home, at odd times, when he had no employment at his

trade, made up masquerade garments, until he had about 75 suits, which he rented out during the winter season to masqueraders. After his marriage he gave his wife the suits, and she increased the number to about 175, and during the following winter directed her husband to hire a room in which to display and rent the suits, which he did, and his son took care of and rented the suits. After the season was over, the suits were packed away, where they remained until the following November, when they were levied upon by one of the husband's creditors. And it was held that the husband had the right, in pursuing his business of making suits of clothing, to purchase cloth and make suits for sale, which would be exempt to the value of $250; that, if he did not choose to sell the suits, he had a right to rent them out, and still they would be exempt from execution; that, as the suits were his absolute property, he might give them away, and his creditors would have no legal ground for complaint.

12. *Hutchinson v. Whitmore*, 90 Mich. 255, holding that under the statute a farmer can claim such exemption from hay, oats, corn, a yearling steer, a heifer, two spring calves, and a quantity of clover seed and cornstalks on his farm at the time of the levy, said property exceeding in value said exemption.

### Partnership Property.

1. *Worman v. Giddey*, 30 Mich. 151, where, upon the dissolution of an insolvent firm, the partnership effects were divided between the two partners, one of whom immediately became engaged in the same kind of business which had been carried on by the firm. Creditors of the firm, having obtained a judgment in a suit commenced against both partners after the dissolution of the partnership, levied upon the property set off to one of the partners, and he replevied the same. On the trial the plaintiff gave evidence tending to show that the property so levied upon was worth $55, and was necessary to enable him to carry on his business. And it was held that, by the division, the plaintiff became separate owner, prior to the suit brought by the execution creditors, of the property levied upon, and his right to the same under the statute was not made abortive by reason of the fact that the property came to him from the firm, and was taken by the defendant on a debt of the firm.

2. *Stewart v. Welton*, 32 Mich. 56, where, in trespass for the seizure and conversion of a lumber wagon and appurtenances, the circuit judge found that while the plaintiff, who was a blacksmith, was a member of a firm engaged in the business of blacksmithing, the property in controversy was manufactured by said firm for sale as stock in the line of their business,

they intending from the proceeds of such sale to replenish their stock and continue their business, the proceeds being necessary for that purpose; that it was usual, and was a part of the business of blacksmiths in the section where said business was being carried on, to buy the wood-work of wagons, and frequently pay for the same by changing works, and to do the iron-work of the wagons at odd spells and at dull seasons of the year, and sell the wagons when finished, and apply the proceeds as above stated; that, upon the dissolution of the firm and the division of its assets, the property in question fell to the plaintiff as his share; that he continued the business of blacksmithing, in which he was wholly engaged, and held the property for sale, the proceeds to be used in carrying on his business, and being necessary for that purpose, and that all the property owned by him, including that sued for, did not exceed in value $160. And it was held that the property was exempt under the statute.

3. *Waite v. Mathews*, 50 Mich. 392, where plaintiff sued defendant in trover for the conversion of certain property on which the plaintiff held two chattel mortgages made by a firm. The defendant claimed to have acted under executions issued from the United States court against a firm of which the mortgagors were members, on judgments upon debts older than the mortgages, and the chief controversy was upon the validity of the mortgages as against the judgment creditors. The court below held that the mortgages were absolutely void, as a matter of law, for want of immediate possession, and refused a recovery for exempt property as well as the rest. And it was held that, so far as the exempt property was concerned, there was no foundation for any such ruling; that creditors have no rights against exempt property, and the officer levying is bound to respect it in the case of partners as well as in other cases.

4. *Skinner v. Shannon*, 44 Mich. 86, holding that, where a levy is made upon a stock of goods belonging to a copartnership, each member of the firm is entitled to his exemption, and, if more than one of the partners claim the same articles, the officer, on their failure to agree among themselves, may make the selection for them; and *Chipman v. Kellogg*, 60 Mich. 438, to the same effect; and *McCoy v. Brennan*, 61 Mich. 362, holding the same doctrine as to the right of each partner to his exemption, and that said right is an individual one, which each partner can enforce as an individual in a separate suit; and *Rogers v. Raynor*, 102 Mich. 473, holding that copartners cannot join in an action of trover for their individual exemptions in the partnership property.

*Chattel-Mortgaged Property.*

1. *Bayne v. Patterson*, 40 Mich. 658, holding that the selection by an officer, in the absence of the debtor, of property covered by a mortgage to more than its appraised value, is a fraud on the debtor, who is entitled to the full amount of his exemption; that a levy on mortgaged property is in law only a levy on the right of redemption, and no selection can under 'the law be made of any specific portion of it so as to bind the mortgagee.

2. *Showman v. Lee*, 79 Mich. 653, where a married woman, who was engaged in business on her own account, in order to secure a debt due her, indorsed the debtor's notes to other creditors, which were signed by her husband as surety, and took a chattel mortgage on the debtor's stock of goods, conditioned for the payment of her claims, and also to save her harmless on account of such indorsements. An unsecured creditor attached the goods, and the sheriff set off to the mortgagor, without authority from the mortgagee, his statutory exemption. And, in a suit by the mortgagee against the attaching officers for the value of the goods, it was held that the transaction made the plaintiff a trustee of the mortgaged property, so far as the creditors were concerned whose notes she had indorsed, and clothed her with a duty to see that the avails were applied to the payment of said indorsed notes; that she held the legal title to the mortgage not only for this purpose, but directly for the benefit of her husband, as such surety, who had a right to the protection of the mortgage; and that in the absence of a ratification by her, with full knowledge of what had been done, of the action of the sheriff in setting off said exemptions, her rights as mortgagee were not affected thereby, and she could recover the full amount covered by the condition of the mortgage.

3. *Harvey v. Ford*, 83 Mich. 506, where one of two partners, with the consent of his copartner, sold his interest in the business to a third person, who assumed an undivided half of the firm debts, and was to stand in the place and stead of the retiring partner. Three days afterwards, the non-retiring partner executed a chattel mortgage on the partnership property in the names of both the old and the new firm. The mortgagees replevied the property, and the partner who had bought into the firm claimed that he was entitled to an exemption to the value of $250. And, in affirming a judgment in favor of the plaintiffs, it was held that one partner has authority to execute a mortgage to secure partnership debts, and that the statute does not apply to such a mortgage, although his copartner may not have been aware of its execution. And, to the same effect, see *Robards v. Waterman*, 96 Mich. 273.

*Selling Non-exempt Property, and Investing Proceeds in that which*
*is Exempt.*      .

*O'Donnell v. Segar*, 25 Mich. 367, holding that it is not fraudulent
for one whose property does not, in the aggregate, exceed the
aggregate value of all the exemptions, but part of which, in its
present shape, is not exempt, to convert or exchange it into those
particular kinds of property which are exempt; that the statute,
in attaching the exemption to the business or employment, must
be held to allow any man to abandon any kind of business in
which the exemption was not allowed, and adopt one to which
the exemption is attached, and to take the benefit of the exemp-
tion, without being chargeable with fraud in so doing, even
though he has made the change of employment for the very
reason that he will thus be able to retain property which other-
wise would not be exempt, if he adopt said employment, in fact
and reality, as that on which he chiefly relies for a livelihood,
and not as a mere pretense or sham.

*Debtor may Resist Levy on Property which is Wholly Exempt.*

*People v. Clements*, 68 Mich. 655, where respondent was con-
victed of resisting an officer in the service of a writ of attachment,
running against the respondent and his wife, upon a pair of horses,
a wagon, a harness, whiffletrees, and two blankets, belonging to
the wife, and used by them in carrying on agricultural pursuits
as their principal business. No appraisal was made of the
property, and the testimony all showed that it was worth less
than $250. And it was held that there was no law in this State
which permits a sheriff or other officer to take from a debtor
his only team, wagon, and harness, worth less than $250, while
his business is farming, and he is engaged therein, whether he has
process against the debtor or not; that no writ in this State
authorizes the sheriff to levy upon such property, and, when he
does it, it is at his own peril; nor is the debtor compelled to sub-
mit to such trespass without reasonable resistance.   .

*Officer Cannot Demand Indemnity for Levying on Exempt Property.*

*Evans v. Collar*, 75 Mich. 433, holding that a sheriff cannot
demand indemnity for levying on exempt property, and is bound
to know what his duty is in regard to any claim of exemption by
the judgment debtor.

*Inventory and Appraisal Necessary for Protection of Officer.*

1. *Elliott v. Whitmore*, 5 Mich. 532, holding that, where property
which is exempt from execution to a specified amount or value
is levied upon, the officer, if he would protect himself from the
consequences of an action for taking it, must cause an inventory

and appraisement of the whole of such property belonging to the debtor to be made, and. the amount exempt to be set out to the debtor.

2. *Ostrander v. Packer*, 35 Mich. 430, where an attachment debtor replevied from the officer a horse which he claimed to be exempt from execution. On the trial it was shown that the debtor was engaged in a business which required the use of a team. The value of the horse was placed by the witnesses at from $100 to $250, and it appeared that the debtor had at the time the attachment was served another horse and a harness, and there was also evidence that the horse in suit was a trotting horse, and had been kept in training for that purpose. And it was held that, on the undisputed facts, the plaintiff was entitled to recover; that he was entitled to exemption for a team, and, if the officer claimed that what he had which would answer the designation was of greater value than $250, he should have levied on the whole, and had it appraised, to give opportunity for the selection the statute provides for.

3. *Town v. Elmore*, 38 Mich. 305, where a constable levied two executions on stock in a foundry and machine shop, which were being carried on by the execution debtor, and without having any inventory made of the stock, or taking any steps to enable the debtor, if he claimed any part of it as exempt from execution, to have the same set off to him, proceeded to make sale thereof. The debtor sued the constable in trover, and on the trial it was contended on behalf of the defendant that, if he left in possession of the plaintiff stock to the amount of $250, he could not be liable for a failure to cause what he did levy upon to be inventoried and appraised, and a distinction was taken between a levy on tools, implements, etc., in respect to which it is always supposable the debtor may have a choice which would be important to him, and a levy on a part of a stock in trade or business, one part of which may be assumed to be as desirable for the debtor's purposes as any other part. And it was held that the statute makes no such distinction, and that plaintiff was entitled to maintain his action.

4. *Bayne v. Patterson*, 40 Mich. 658, where, on levying upon the furniture and contents of a saloon, including the liquors and other stock, the debtor was turned out of possession, and, after the property had been appraised, the officer, in the absence of the debtor, set apart certain tables and furniture as exempt, and carried away the remainder of the property, which the debtor replevied. And it was held that the officer had no right, in making the levy, to turn the debtor away from his own premises, and, having done so, could not treat him as having lost his

rights through absence from said premises during the time in which the appraisement and selection of the exempt property were made.

5. *Michels v. Stork*, 44 Mich. 2, holding:

a—That the provisions of the statute requiring the officer, in case of a levy upon property of a species exempt from execution to a specified value, to have the property appraised, and give the defendant an opportunity to make his selection under the statute, are applicable to a justice's court attachment.

b—That the statement of the defendant, at the time of the seizure, that the property belongs to his brother, is not conclusive, and will not excuse the officer, who, if he believes the statement, has no right to seize the property at all, and, if he seizes it as the property of the defendant, it is his duty to give the defendant an opportunity to make his selection.

c—That the plaintiff, though present and directing the seizure, is not liable for the failure of the officer to make the inventory and appraisal, and give the defendant an opportunity to make his selection, unless he was the cause of the failure of the officer to do so.

6. *Ferguson v. Washer*, 49 Mich. 390, where plaintiff sued a constable in replevin for a wagon and a set of bob-sleighs seized on execution. The defendant failed to make an inventory and appraisal of the property. The jury found that the plaintiff's *status* was not such as to cause the property to be exempt in his favor. And it was held that there was no case for a selection of anything as exempt, and the question in regard to inventory and appraisal was of no importance.

7. *Handy v. Clippert*, 50 Mich. 355, where the plaintiff, having decided to remove temporarily her business of keeping a boarding-house from Detroit across the river into Canada, packed up her goods and property used by her in the business, but, before she left with the same, a deputy sheriff, by virtue of a justice's attachment for $68, seized all of the property, valued at $800. When the plaintiff found her temporary arrangement was to be thus broken up, she procured a house near Detroit, into which she proposed to remove with a view to remaining there. The officer kept the goods from the plaintiff for one week, allowing her no exemptions. When the suit was called, the action was not sustained against the plaintiff, and, the goods not being then returned to her, she sued the sheriff in case, counting on the wrongful denial of her exemptions. And it was held that, even if the seizure had been justifiable, the circumstances were such as to demand from the officer prompt action in setting off the exemptions, for every day's delay was an unnecessary injury.

8. *Stilson v. Gibbs*, 53 Mich. 280, where the plaintiff occupied a farm owned by his wife, and had harvested and stored in the barn a crop of wheat. He had prepared for seeding to wheat about 40 acres, and relied for seed upon the crop in the barn. The defendant, as sheriff, had for collection an execution against the plaintiff, and one of his deputies made a levy upon the wheat, which was threshed, advertised for sale, and sold. Plaintiff sued in trover, claiming a part of the wheat as exempt for seeding, under the provision exempting, to the amount of $250, the tools, implements, stock, etc., necessary to enable him to carry on his business. The defendant offered to show that plaintiff had other property (in the same county) to the value of more than $250, which would be exempt to him under said provision, and therefore was not entitled to recover for the seed wheat. And it was held that the testimony was properly excluded; that the statute requires that the officer shall levy upon all the debtor has of such property, and then permit him to select to the amount exempt; that when the officer fails to obey the law, and thereby deprives the debtor of the opportunity to make selection before sale, he may elect to take the property sold, and sue for its value.

9. *McCoy v. Brennan*, 61 Mich. 362, holding that where property is levied upon in which an exemption is claimed, the claimant, on being notified of the levy, should make his selection, and on his failure to do so it is the duty of the officer to make it for him; that a sale by a sheriff in violation of these statutory rights and duties is a conversion, respecting which he may be regarded as a *tort feasor* from the beginning, and as having received goods contrary to the provisions of the statute exempting property from sale on execution.

10. *Jones v. Peek*, 101 Mich. 389, holding that the statutory requirement as to the making of an inventory of the property, the appraisal of the same, and the selection by the debtor from such inventory of an amount of such property not exceeding, according to such appraisal, the amount of his exemption, is fully complied with, in case of the seizure of goods under a justice's court attachment, by the service on the debtor of the inventory made by the officer of the attached property, and the tender to him of the use of the appraisal which the officer has caused to be made of said property, to enable the debtor to select his exemption.

### Who May act as Appraiser.

*Bayne v. Patterson*, 40 Mich. 658, holding that it is unlawful for an officer, who has levied upon property a portion of which is exempt, to select as one of the appraisers the attorney for the

plaintiff in an attachment suit, under which a levy is made upon the property at once after the levy of the execution and previous to said appraisement.

#### Debtor need not Select Mortgaged Property for his Exemption.

*Baldwin v. Talbot*, 43 Mich. 11, where a sheriff levied an execution upon a horse, which was exempt, and upon certain mortgaged property, including another horse and a buggy, and, by direction of the execution creditor, disregarded the claim of the debtor that the horse first levied upon was exempt, and refused to surrender the animal. In replevin for said horse, an offer was made to show that the debtor had given a chattel mortgage on his other property, and to show fraud in that mortgage. And it was held that the right of exemption of the horse first levied upon could not depend on the condition of any other property; that it was held in *Bayne v. Patterson*, 40 Mich. 658, that a debtor was entitled to exemption of property to the full statutory value, and that he could not be compelled to select mortgaged property, as that would defeat the beneficial purpose of the law, and give him no such amount as the law designed to secure to him; that if there was other property covered by a mortgage claimed to be fraudulent, or not covered by any incumbrance, the judgment creditor might have issued an *alias* execution and levied on it, if the first levy failed to pay his debt, but the first claim of exemption could not be destroyed. And see *Ganong v. Green*, 71 Mich. 1, holding that an execution debtor need not select mortgaged property for his exemption.

#### Debtor not Deprived of Exemption Because he has Property of Same Class in Another County which is not Levied Upon.

1. *Alvord v. Lent*, 23 Mich. 369, holding that it is not necessary to the validity of proceedings in one county to subject to execution running therein any property of the debtor there found which belongs to a class or species exempt by law to a specified amount or value, that the whole property of the debtor, of the same class, situated in any other county or counties in the State, shall be inventoried and appraised, and the portion to be left to the debtor out of the mass selected by the latter or by the officer.

2. *Baldwin v. Talbot*, 43 Mich. 11, where on the trial of an action of replevin for a horse exempt from execution, but which had been levied upon, the evidence tended to show that the plaintiff had some property in another county which would have been within the right of exemption had it been seized on execution. And it was held that there is nothing in the statute to prevent an execution debtor from claiming property as exempt against levy

in one county because he may happen to have property somewhere else which is not levied on; that such a question might arise if, on a second levy, he should claim exemptions which, with his first claim, would be excessive.

### Miscellaneous Cases.

1. *Wilson v. Bartholomew*, 45 Mich. 41, holding that a debtor's property which is exempt from execution is also exempt from garnishee process, at the election of the debtor.

2. *Buckley v. Wheeler*, 52 Mich. 1, where, on the same day that certain goods were attached, the debtor chattel mortgaged the goods to a third party, who also claimed to have received a bill of sale of the goods. The mortgagee replevied the goods, and on the trial there was a dispute as to the priority of date between the mortgage, the bill of sale, and the levy. The goods were all exempt from execution, but there was evidence tending to show that a part of them had been sold on credit to the debtor by the attaching creditor. And it was held that the disposal of the goods by the debtor could not subject them to execution, or affect the exemption; that plaintiff's claim, whether under sale or mortgage, was superior to the attachment levy, except so far as said levy might include goods sold to the debtor by the creditor, the purchase price of which was involved in the attachment suit, and, if it was prior to the attachment levy, it would be superior as to all of the property.

3. *Bendetson v. Moody*, 100 Mich. 553, where plaintiff brought trover against the defendant, as sheriff, for a stock of goods, which defendant had attached, after their sale and delivery to the plaintiff, at the suit of the vendor's creditors. On the trial the defendant introduced testimony tending to show that after the levy of the attachment, and the commencement of the trover suit, the vendor selected his exemptions, and they were set aside to him by the defendant. And it was held that the testimony was inadmissible, it appearing that the transaction occurred several days after the sale, and after the attachment; that the vendor made no claim to the goods, but, after the levy of the attachment, the defendant sought him out, and informed him that the stock was being seized as his property, and that under the statute he was entitled to his exemptions, and that, if he did not select them, it was the defendant's duty to do so for him; that thereupon the vendor selected the goods, and they were turned over to him by the defendant; and that whatever was done, was done at the instance of the defendant.

### Pleading.

1. *Elliott v. Whitmore*, 5 Mich. 532, holding that in replevin **for**

exempt property it is not necessary specifically to set out the character of the property in the declaration, so as to show the exemption, that question being triable under the general form of declaration furnished by the statute.

2. *Hutchinson v. Whitmore*, 90 Mich. 255, holding that, in trover against a sheriff for the conversion of exempt property seized on execution, the usual declaration in trover is sufficient to enable the plaintiff to show the facts essential to a recovery, the contrary doctrine announced in *McCoy v. Brennan*, 61 Mich. 362, being regarded as *obiter*.

### Evidence.

1. *O'Donnell v. Segar*, 25 Mich. 367, where plaintiff replevied a yoke of oxen which had been seized under a writ of attachment, claiming them to be exempt under the statute. And it was held that it was incumbent upon the plaintiff to show:

*a*—That he owned or was entitled to the possession of the oxen.

*b*—That he was engaged in some kind of business or employment which called for the use of a team, or yoke of oxen.

*c*—That he had no other team, or, perhaps, none other which, together with the one in suit, would exceed in value $250, or, if they did, that he had taken the proper course to select the oxen replevied, or that he had been wrongfully prevented from making such selection.

2. *Wood v. Bresnahan*, 63 Mich. 614, where a sheriff attached a quantity of machinery, and the same was appraised at $970. The debtor claimed certain articles, appraised at $250, as exempt, and demanded the same, and, on the refusal of the sheriff to deliver them, brought replevin. On the trial defendant was allowed to prove that the value of the articles replevied exceeded $250. And it was held that the testimony was not admissible for the purpose of showing that the property was not exempt as exceeding in value the statutory limitation; that the statute requires the property to be appraised, and then permits the debtor to select property to the appraised value of $250 as exempt, and if the debtor is entitled to the property as exempt, as belonging to the class specified in the statute, the appraisal is conclusive as to value.

### Waiver.

1. *Rich v. French*, 99 Mich. 27, holding that a written consent by a debtor to the public or private sale in bulk of his entire stock of goods on several executions under which it is held, and the application of the proceeds, less the costs of the sale, in liquidation *pro rata* of the debts of the several plaintiffs, is evidence of a waiver by the debtor of his statutory exemption,

unless contradicted or qualified by legitimate evidence tending to break its force.

2. *Rogers v. Raynor*, 102 Mich. 473, holding that where partners in a venture involving the publication and sale of a book deliver the paper and electrotype plates to contractors, who are to do the press work and binding, they waive their individual exemptions, and subject the books to the lien of the contractors for their labor.

## *Purchase Money Judgment.*

For cases bearing upon the construction of and proper practice under 3 How. Stat. § 7716, which provides that the property exempted in How. stat. § 7686, subd. 8, shall not be exempt from any execution issued upon a judgment rendered for the purchase money for the same property, and that any sale of such property after the commencement of a suit to recover the purchase price thereof, and the filing of a notice with the clerk of the city, village, or township in which the owner of such property resides, stating the time when the suit was commenced, the amount claimed to be due, that the suit is brought to recover the purchase money for the property, a description of the property sought to be reached, and the name of the defendant, shall be null and void as against such execution, see:

1. *Shepard v. Cross*, 33 Mich. 96, holding that the transferee of a note given for the purchase price of a horse is not entitled to claim that, as to his judgment on said note, the horse, though otherwise exempt, is liable to execution; that the payee, when she elected to transfer the note, elected to consider it as payment for the horse, and if there was any previous right in her, or in anybody else, to claim the horse upon execution as not exempt against the debt, it existed no longer.

2. *Roberts v. McGur*, 82 Mich. 221, holding:

*a*—That the statute does not create a lien upon the property, but applies to the remedy for the recovery of the purchase money for which it was sold.

*b*—That the provision permitting notice to be filed after suit is commenced is analogous to a *lis pendens* filed in other cases, and is designed to protect and preserve the *status* of the property pending suit.

*c*—That there is no reason why the statute should not apply to the remedy in cases where security (in this case an indorsement of the note taken for the purchase price) is taken as well as where it is not.

*d*—That no reason is seen for declaring the statute unconstitutional.

3. *Lillibridge v. Walsh*, 97 Mich. 459, holding that the statute

does not affect the vendee's right of alienation until the statutory notice is filed; that it gives the vendor the right to follow the property into the hands of a fraudulent· transferee,· and subject it to the satisfaction of his judgment; and that it does not require that the judgment shall recite that the· recovery is for purchase money, that question being left to be litigated whenever it arises, as between the parties or their privies; and see same case, 104 Mich. 153, holding:

*a*—That property otherwise exempt from execution, but subject thereto under the statute for the purchase price, may be seized in the hands of third persons where its transfer to them was made for the purpose of defeating said statutory right of the vendor, although the notice provided for in the statute was not filed prior to said transfer.

*b*—That the statute does not create a lien upon the property, but applies to the remedy merely; and there is no force in the contention that, in the absence of fraud, the vendee is bound by actual notice.