## MAZZIA V. STATE.

1. LIQUORS: *Sale in prohibition districts: "Drag-net proviso."*

Under the act of 1883, amendatory of the license law, and known as the drag-net proviso, (Mansf. Dig., sec. 4522,) a conviction for selling liquor without a license may be sustained in a prohibition district where no license can be legally issued. *Chew v. State,* 43 Ark., 361.

Mazzia v. State.

2. SAME: *Same: Penalty of revenue law.*

The provisions of the revenue act of 1883, creating the offence of carrying on the business of a liquor seller without a license, amended by implication the general license act of which they thus became a part. By such amendment the drag-net proviso of the license law, (Mansf. Dig., sec. 4522,) was made applicable to the penalty of the revenue act, and that penalty may therefore be imposed on one who carries on the business of selling liquors in a prohibition district.

3. INSTRUCTIONS: *Oral explanation of written charge.*

Where a party demands that the jury be instructed in writing, it is error to make verbal explanations of the written charge; and unless it affirmatively appears that such error was harmless, it is ground for reversal.

APPEAL from *Saline* Circuit Court.

J. B. WOOD, Judge.

*L. Leatherman* and *G. W. Murphy*, for appellant.

The revenue law and the local option law cannot be enforced in the same territory at the same time. The penalties provided by the revenue law are suspended in territory where no license can be issued.· Acts 1883, p. 212; Ib., p. 192; Acts 1879, p. 33; 35 Ark., 414–422; 34 Id., 381; 41 Id., 305; Ib., 308.

Since the drag-net proviso of act March 26th, 1883, this court has held that the indictment might be framed under the three mile law or the amended license act, 43 Ark., 361. But the general revenue act contains no such drag-net provision. The penalty is alone to enforce payment of license *when license can be had*, and the *gravamen* of the offence is *defrauding the State of her license tax*. 45 Ark., 93. The legislature certainly never intended to collect a tax in a locality where the sale of liquor was *prohibited*. Sec. 4, revenue law, provides for a *tax* upon those engaged in the business of a liquor seller. 34 Ark., 383. The act 31st March, 1883, passed *after* the three mile law and license law as amended did not expressly or impliedly

Mazzia v. State.

repeal them, for if so no license could have been granted. In enforcing penalties the revenue law should be construed strictly and not be extended beyond the exact words and intent of the act. It was not intended as a police regulation, but to guard against *defrauding* the State out of her revenue. See *Chamberlain v. State*, 6 S. W. Reporter, 424; 9 Id., 11; 41 Ark., 308; Ib., 305.

2. The court erred in giving to the jury verbal explanations of written instructions. Constitution Ark., 1874, Art. 7, sec. 23; 29 Ark., 268.

3. The indictment should charge that defendant was a liquor dealer, and the evidence must show not a solitary sale, but that the trade had been carried on in violation of law. 34 Ark., 340.

*Dan. W. Jones*, Attorney General, for the State.

Appellants were indicted for engaging in the sale of liquors without paying the tax required by the revenue act of March 31, 1883, (sec. 5594, Mansf. Dig.,) as amended by act of March 20, 1885, (Acts of 1885, p. 88.)

The act of March 31, 1883, is a revenue act strictly, and not a license act. It is not inconsistent with and does not repeal the act of March 8, 1879, entitled, "An act to regulate the sale of vinous, ardent, malt or fermented liquors," which is the liquor license act of the State. This license act prescribes the terms and conditions upon which one may exercise the privilege of engaging in the liquor business, and the revenue act levies a tax upon such business. The license act punishes *any sale of liquor without license*, regardless of the quantity sold, while the revenue act only punishes those who *engage in the business as a liquor dealer, without paying the tax*. They cover different fields of legislation. *Blackwell v. State*, 45 Ark., 90.

The "local option act," in localities where it was put in force, suspended only the license act. Such only is the extent of the decision of this court in *State v. Cathey*, 41 Ark., 308. It never suspended the revenue act a for any purpose whatever. The act of March 26, 1883, (sec. 4522, Mansf. Dig.,) was necessary to sustain an indictment in local option districts under the license act, but it was not necessary to sustain an indictment under the revenue act. There is no inconsistency between the local option and the revenue acts, but both may exist and be enforced in the same locality.

The tax levied on the traffic in liquors is not equivalent to a license of the traffic; *Youngblood v. Sexton*, 32 Mich., 408, 418. Taxes upon business are usually collected in the form of license fees, but this does not imply a license. There is no necessary connection whatever between them. A business may be licensed and not taxed, or it may be taxed and not licensed, and a tax may be levied on a business already licensed independently of the tax. *Youngblood v. Sexton*, *supra*, 425; *McGuire v. Com.*, 3 Wall., 387; *Pervear v. Com.*, 5 Ib., 475; *License Tax Cases*, Ib., 462. In the three cases last cited, it is clearly held by the Supreme Court of the U. S. that the Federal government may lawfully tax the business of carrying on the liquor traffic in a State where such traffic is forbidden by the State law. And the same thing may be done by the State in localities where local option prevails. It is not licensing the unlawful traffic, but it is simply taxing it, imposing a burden upon it. *Youngblood v. Sexton*, *supra*, 425–6. And the failure to pay such tax may be punished criminally. *License Tax Cases*, *supra*. The convictions were proper and should be sustained.

Mazzia v. State.

COCKRILL, C. J.

The appellant was convicted of carrying on the business of a liquor seller without license, in the city of Hot Springs, Garland county, where the local option law was in force. It is argued that the penalties of the statute defining the offence are suspended in the territory where no license can be issued; and, to sustain the position, we are cited to the case of *State v. Cathey*, 41 Ark., 308, where it was held that the liquor seller was liable only to the penalties pronounced by the local option law, for sales in local option districts. See, too, *DeBois v. State*, 34 Ark., 381; *State v. Orton*, 41 Ib., 305. But the legislature remedied this defect in the license law by an amendment passed in 1883, known as the drag-net proviso to the license law, [Acts 1883, p. 192,] by which it was provided that one who sold liquor in territory where sales were prohibited, might be convicted as for a violation of the license law, or of the local option or special law which prevailed in the territory where the sale was made. Since that enactment we have regarded the penalties of the license act as in force in prohibition districts, and have adjudged that a conviction for selling without a license may be sustained even in a locality where no license could be legally issued. *Chew v. State*, 43 Ark., 361. But the offence of carrying on the business of a liquor seller, as distinguished from the offence of casual selling without license, was created by the revenue act of 1883, which was enacted subsequent to the license law; and it is argued that this offence is not within the terms of the drag-net proviso above mentioned, and that the case is controlled, therefore, by the decisions cited *supra*.

The drag-net proviso was enacted prior to the revenue law of 1883, and by its terms extends the penalties of the

1. LIQUORS: Sale in prohibition districts: Drag-net proviso.

2. SAME:

general license law to sales in prohibition territory. Now, as penal acts are construed strictly so as not to extend their terms beyond the clearly expressed intent of the legislature, the proviso mentioned cannot be said to cover the subsequently defined offence, unless it is apparent that the act creating it became a part of the license law to which the proviso is attached. The rules for construing a proviso are not different from those that govern any other legislative expression. *Friedman v. Sullivan*, 48 Ark., 214. It is the intent that is to be arrived at from the context in all cases. The proviso here is not coupled with any particular provision of the license law, but it was the evident intention to extend it to all the penalties denounced by that law. Hence, its denomination as the drag-net proviso. If the license act had been expressly amended subsequent to the proviso so as to change the penalties, or add a new offence, the terms of the proviso would attach to the amendment without doubt, because the intention to make the new provisions part and parcel of the old law would be express. But an act may be modified, changed or amended by implication as effectually as by express reference, [*Hill v. Coates*, 41 Ark., 149; *Scales v. State*, 47 Ib., 476; *People v. Mahaney*, 13 Mich., 481,] and when that is done the law is read as one harmonious whole, just as though it had been originally so arranged by the law making power. It is the only method of arriving at the legislative intent where there are several acts upon the same subject. Following this well understood and common practice, the learned gentlemen who revised the statutes in 1884, incorporated the liquor license provision of the revenue act of 1883 into the general license act, making the drag-net proviso read as applicable to the new penalty denounced by the revenue act, Mansf. Dig., secs.

4511, 4522. It is true we held in *Blackwell v. State*, 45 Ark., 90; that the revisers fell into error in substituting the penalties of the revenue act for those of the license act; but that was only upon the theory that the two acts were consistent in that respect, both penalties remaining in force. But there is nothing in that case from which it can be inferred that the revisers erred in applying the proviso to the new penalty.

The provisions of the revenue law about the liquor traffic were not designed for revenue only, else the traffic would not have been prohibited and made illegal except upon the condition of taking out a license. The heavier penalty imposed shows it a severer disciplinarian than the former license act. The price to be paid for the liquor license provided for in it superceded the regulation of the license act, both as to wholesale and retail licenses, leaving the machinery for obtaining license to be governed by the latter act, as was ruled in *Drew Co. v. Bennett*, 43 Ark., 364. The license provisions of the revenue act have thus been treated by the court as modifying and amending the general license act, thereby becoming a part of it. When thus amended, the general proviso of the former act became applicable to the act as amended, and made the liquor seller chargeable with the heavier penalty wherever he carries on the business illegally. We applied the same rule in construing the several statutes of limitation in the case of *Railway v. Manees*, 49 Ark., 248, and there are numerous instances in which it has been silently recognized. The body of the statute law would be in inextricable confusion under any other rule of construction.

In sustaining a conviction for selling without a license where the law prohibits the issue of a license, the courts thus

*Penalty of revenue law.*

follow the expressed will of the legislature; but, if the appellant's contention were true that the provisions of the revenue act above referred to were directed solely to the purpose of taxation for revenue, with no other object in view, he could derive no relief from it, for the seeming inconsistency of condeming one for selling without paying the tax where no tax is legally payable, is not real. The assumption that to charge one with selling without paying the tax implies (falsely) that the payment of the tax would have legalized the business in a prohibited district, rests upon the judicial anomaly that a violation of the local option law, which prohibits the traffic, is a justification for a violation of the taxing law. But the two acts tend to the same end—the heavier tax of the revenue law being in aid of and not antagonistic to the local option law. *Youngblood v. Sexton*, 32 Mich., 406; *License Tax Cases*, 5 Wall., 462.

3. INSTRUCTIONS: Oial explanation of written charge. When the court was about to instruct the jury, the defendant made a special request that the charge be wholly in writing. The court charged the jury in writing, but in doing so made "verbal explanations," as the bill of exceptions has it, "of the written instructions, explaining to the jury how they were to be construed and what the court considered they meant." Objection to this mode of charging was renewed at the time, and the action of the court was assigned as a ground for new trial. The verbal charge was not reduced to writing.

The constitution requires the judge to reduce his charge or instructions to the jury to writing at the request of either party. Art. 7, sec. 23. The law is mandatory and cannot be evaded, when a party demands its execution. *National Lumber Co. v. Snell*, 47 Ark., 407.

A judgment will not be reversed, however, for an unsub-

stantial error in this regard more than any other; as where provisions of the statute are read to the jury without being transcribed, [*Palmore v. State*, 29 Ark., ʻ268] or where the oral charge is simple and without complication and is accurately reduced to writing without unnecessary delay and is set out in the bill of exceptions. *Lumber Co. v. Snell*, 47 Ark., *supra*. In such cases we can judicially determine that the error was not prejudicial. *O'Donnel v. Segar*, 25 Mich., 379–80. But when it does not affirmatively appear that the error is harmless, we cannot disregard the mandate of the constitution. The right guaranteed by the fundamental law would be worthless if it was incumbent on the defendant to show that the charge was erroneous, because that error itself would be ground for reversal. The object of the law was to obtain a carefully considered charge and to prevent any misconception and after-misunderstanding as to its exact tenor and phraseology, when the bill of exceptions came to be considered. *Barkman v. State*, 13 Ark., 705. Oral explanations of the written charge are within the mischief as well as the oral charge. *O'Donnel v. Segar, supra; Head v. Langworthy*, 15 Iowa, 235; *Ray v. Wooters*, 19 Ill., 82; *O'Hara v. King*, 52 Ib., 306; *Bradway v. Waddell*, 95 Ind., 170; Sackett on Instructions to Juries, p. 13, sec. 1; Thompson Charg. Juries, sec. 104.

It would not do to indulge the presumption that the oral explanation did not change or modify the written charge any more than the presumption that the charge is right in a case where the court refuses to reduce it to writing.

For this error the judgment must be reversed. It is so ordered.