St. Louis, Iron Mountain & Southern Railway Company *v.* Baker.

Opinion delivered March 3, 1900.

| 67 | 531 |
| 72 | 578 |
| 67 | 531 |
| f78 | 59 |
| f82 | 507 |
| 67 | 531 |
| 88 | 175 |

1.  Appeal—Conclusiveness of Verdict.—A verdict based upon conflicting evidence will not be set aside on appeal as unsupported by evidence. (Page 537.)

2.  Contributory Negligence—Question for Jury.—Whether or not a feeble passenger waited a reasonable time for the promised assistance of the trainmen before attempting, unaided, to alight from a train is for the jury, where the facts are in dispute.    (Page 538.)

3. INSTRUCTION—IGNORING PARTICULAR THEORY.—An instruction is not objectionable as ignoring proof tending to establish defendant's theory of the case if that theory is sufficiently presented in another instruction. (Page 538.)

4. PASSENGER ALIGHTING FROM TRAIN—WHEN NOT NEGLIGENT.—In an action against a carrier by a passenger who was injured in attempting to alight unaided from a train, although she had been promised the assistance of the trainmen, the court properly instructed the jury that she might rely on the directions of the conductor, though addressed to passengers generally, to get off the train, "provided she took no more risks in getting off the train than a prudent person would have taken under the same circumstances." (Page 538.)

5. INSTRUCTIONS—INVITED ERROR.—Appellant company cannot complain of an instruction given at appellee's instance as abstract if it asked, and the court gave, an instruction bearing upon the same subject. (Page 539.)

6. SAME—WHEN NOT PREJUDICIAL.—An abstract instruction is not prejudicial if the special finding of the jury shows that it was eliminated from their consideration. (Page 539.)

7. SAME—BURDEN OF PROOF.—An objection to an instruction casting the burden of proof on defendant to show contributory negligence on the part of plaintiff that it deprives defendant of the benefit of any proof of such negligence in plaintiff's testimony is cured by another instruction that the jury will find for defendant if the testimony shows that the injury was due to plaintiff's lack of care. (Page 539.)

8. CONTRIBUTORY NEGLIGENCE—WHEN QUESTION FOR JURY.—A passenger in feeble condition requested the assistance of the trainmen in alighting from the cars, and was told by the porter to keep her seat, and he would come back and help her off. On arriving at the station she waited until the conductor came to the door and said for everybody to get off the train. She then started out with the other passengers, and pressed forward with valise in hand until she reached the bottom step. She called for assistance, but, receiving none, attempted to alight unaided, and was injured. *Held*, that whether she was negligent in attempting to alight without assistance was a question for the jury. (Page 540.)

9. APPEAL—MOTION FOR NEW TRIAL.—An exception to evidence not reserved in the motion for new trial will not be considered on appeal. (Page 541.)

10. PHYSICAL SUFFERING—MEASURE OF DAMAGES.—Where the proof shows that plaintiff received injuries to her skull which have caused her much suffering, and which may be of a permanent character, a verdict of $2,625 cannot be said to be excessive. (Page 541.)

Appeal from Woodruff Circuit Court.

HANCE N. HUTTON, Judge.

STATEMENT BY THE COURT.

This is a suit for damages for personal injury. The injury complained of was caused by a fall while plaintiff was alighting from appellant's train at Bald Knob. The complaint, after setting out the relationship of passenger and carrier, and the occasion and circumstances of the injury in detail, charged "that said fall and injuries were caused by the defendant carelessly and negligently failing to render her necessary assistance in getting off the car."

The answer admitted that the relation of carrier and passenger existed, but in other respects denied the material allegations of the complaint, and set up affirmatively "that whatever injuries plaintiff may have received in attempting to alight from the train * * * were occasioned by her own fault and carelessness in attempting to alight at the time and in the manner in which she did, and without waiting to be assisted off by any of the train crew."

Mrs. Baker, the plaintiff, in her own behalf testified that she did not know she had to change at Bald Knob until the conductor passed through and took up the tickets, just before reaching Bald Knob. She then told him of her feebleness, and wished his help in getting off at Kensett, as she had been used to going that way, and not getting off at Bald Knob. The only answer which the conductor made,—"he just waived his hand at me, and passed on down the aisle." When the porter came along, she asked him to assist her in making the change. He agreed to do so, and told her to keep her seat, and he would come back and help her off. This, she said, he never did. She got off the car in front of the ticket office. Says she waited for the porter until the conductor came to the door, and said for everybody to get off the train. Describing her getting off, she says that she went in front of another lady passenger, and that "some passengers were already off of the train, and some were still behind us." There were persons between her and the conductor, who was in sight, but she "never got right at him." He was out on the ground. "I could see him. I knew him by his uniform." She did not know how far it was to the ground. There was a great deal of noise from a train which was switching. There

were a great many refugees on the train on their way home, a very rude and noisy crowd," and making a great deal of noise.  She pressed forward until she got to the bottom step. "I was on the bottom step, and couldn't get back.  There were people behind me, and I had to get down."  Says she couldn't make anybody hear her when she called for some one to assist her in getting off, "and I had to try to get down alone, of course."  She then describes how she got down with her valise in one hand, and holding to the hand rail with the other. Stepped off with her right foot, "and lost my balance, and whirled around and hit my head on some projection of the car." Did not know whether she fell or lit on her feet.  Was stunned, and couldn't remember for a little while.  The conductor did not think it was anything serious, but said he would come and put her on the train for Kensett, which he did.  After reaching Kensett on her way to her home, she stopped at her family physician's, and had him attend to her wound.  It was about three months before it healed entirely.  Claims that it is not entirely well yet.  Cannot bear anything to touch it.  Her health had not been good before that, but nothing the matter with her head until after this injury.  Suffered in her head all the time for three weeks, and still has spells of suffering.  "For several weeks I never slept any without using chloral."  Q. "Have you ceased using chloral?"  A.  "No, sir."  Q.  "Under whose direction?"  A.  "Under Dr. Tabscott's."  Her worst spells of headache occur once or twice a week.  Does not sleep well, nor eat much.  Her eyes are also affected.  Has feelings of fainting, etc.  Becomes nervous, and can't sleep. She was 58 years old last February.  Usual weight is 104 to 110.  Suffered with dyspepsia, and sometimes would be better, and have more flesh.  In repeating what occurred between her and the brakeman, she again says, "He told me to wait when they stopped until he came back.  He told me to keep my seat until he came back and helped me off."

Dr. Dale testified in part: "I am confident—I am sure— that the bone has suffered an injury.  As to the extent, it would be difficult to say at this late day.  From an examination of the wound, I am confident that the bone suffered at the

time, and it would necessarily leave pain, and it would take time for it to be entirely relieved. It may be that the lady would be a sufferer as long as she lives, because of the external bone being driven into the cavity."

E. R. Brownell testified: Was conductor of the train. Had 14 years of such experience. Took up plaintiff's ticket shortly after leaving Fair Oaks. Witness told her she would have to change at Bald Knob. She said she would need help in making the change. Witness replied: "All right. We will assist you in changing cars." Plaintiff afterwards called witness' attention to the same subject, and witness again assured her that she should have all necessary assistance. "I told her to keep her seat when we arrived at Bald Knob, and we would assist her." The reason the train had to stop at Bald Knob, and transfer its passengers to the train on main line, was on account of Little Rock having quarantined against Corinth and Memphis. Witness then gives in detail the manner of backing down and pulling into Bald Knob. They had to couple the sleeper which they had brought from Memphis on to the sleeper of the main-line train. Witness had to give signals. His brakeman and the one belonging to the other train made the couplings. When this was done, witness went to the coaches of his train to transfer his passengers. He got on the coach where he expected to find plaintiff. "I went in there to find Mrs. Baker, and help her out of the train, but I guess she had already gotten out. I didn't find her. I walked right out again, and stood helping the other passengers out." He did not give any order about getting out, for they were getting out when he reached the coach. He had 25 or 30 passengers in that coach. Witness was assisting some one off the car, when some one remarked that a lady had been injured.

C. R. Whittemore testified: "The first time his attention was called to plaintiff was shortly after they left Fair Oaks. She asked him if the train went through to Kensett. Witness told her that it did not, but that she would have to change at Bald Knob. She said she would need assistance in making the change. "I told her if she would keep her seat until I got through with the work I had to do for a few minutes, after I got through I

would come back and assist her in changing cars." Witness then explains that the work he had to do was to couple on to the main-line sleeper. As soon as he did this, he came forward to assist passengers off. Witness says that the same promise of assistance was made by him twice. The other time was somewhere between Fair Oaks and Augusta. "She said that she needed assistance, and I told her, if she would keep her seat until I got back, that I would help her off." Again he says: "I got off after we coupled up and came on up to see after the lady. I had promised to help her off, and I went through the rear end of the car, and saw that she had got out, and I came around the other way, and the crowd was coming out, and I didn't see her any more." The train stopped at Bald Knob about thirty minutes, so that there was nothing to cause the passengers to be in any hurry. Witness says there was plenty of light from the two principal ones, as well as those from the ticket and telegraph offices. They all threw light on the platform. Had fourteen years' experience on the road. Witness, on cross-examination, again explains what duty he had to attend to with reference to coupling on to the main sleeper. When he did this he was only one car length from the coach in which plaintiff was. Entered the car from the north end, and saw that plaintiff was not there. The crowd was coming out of the south end of that coach, so witness went out the way he came in, and intercepted the outcoming passengers at the south end of the car, and helped some of them off. The conductor was doing the same thing.

The court, at the request of defendant, directed the jury to bring in the following special findings, and the jury, after argument of counsel and instruction of the court, returned special verdicts thereon, as set out in the answers: "(1.) Was the defendant guilty of any negligence which contributed to plaintiff's injury. Yes. (2.) If so, in what did said negligence consist? A. In the conductor not using due diligence in assisting plaintiff from car; she having previously notified him that assistance would be necessary. (3.) Did the plaintiff wait a reasonable time in the car for the assistance which had been promised her? A. Yes. (4.) Was the plaintiff guilty of negligence in undertaking to get off of the train at

the time and under the circumstances surrounding her? A. No." And the jury returned a general verdict for the plaintiff for $2,625. Motion for judgment *non obstante veredicto* on the part of the defendant was overruled by the court. To which ruling the defendant saved its exceptions. Motion for new trial was overruled, and defendant excepted.

*Dodge & Johnson*, for appellants.

The evidence does not sustain either the general verdict or the special findings. It was for the court to determine the question of whether the plaintiff waited a *reasonable* time or the defendant made *unreasonable* delay. 52 Ark. 406; 58 Ark. 334; 20 N. Y. 126; 43 Ill. 420; 49 Ark. 357; 29 Fed. 278; 11 How. 373 ;9 Wall. 197; 22 Wall. 116; 102 Pa. St. 425; 134 Mass. 682; 105 Mass. 77; 26 Mich. 189; 20 Mo. App. 100; 14 Minn. 385; Elliott, Railroads, § 1528; 55 Ark. 134; 3 Elliott, Railroads, § 1169, n. 3 and 4; 86 Ga. 192; 123 Mo. 445. Appellee is barred by contributory negligence. 12 Am. & Eng. R. Cas. 163, 164; 46 Mich. 504; S. C. 9 N. W. 830; 49 Mich. 153; S. C. 13 N. W. 494; 49 Mich. 495; S. C. 13 N. W. 832. On the general rule as to negligence, see: 34 Mich. 323; 34 Mich, 506; 38 Mich. 714; 46 Mich. 498; S. C. 9 N. W. 828; 28 Mich. 440; 47 Mich. 401; S. C. 11 N. W. 216; 46 Mich. 504; S. C. 9 N. W. 830; 49 Mich. 153; S. C. 13 N. W. 494; 49 Mich. 495; S. C. 13 N. W. 832.

*P. R. Andrews*, for appellee.

The question as to what was a reasonable time becomes one for the court only when the facts are undisputed. 30 Cal. 548, 558; 15 Minn. 49; 13 Ill. 289; 1 Stark. Ev. 584, 516, 517 i. The first instruction given for appellee was correct. 37 Ark. 521-2. The eighth, also, was correct. 46 Ark. 182; 48 Ark. 106; *ib.* 334; *ib.* 461.

WOOD, J., (after stating the facts.) Appellant contends, first, that neither the general verdict nor the special findings are sustained by any evidence. The evidence was conflicting, and susceptible of different conclusions being drawn from it, depending upon the point of view from which it was consid·

ered.   The jury were the judges of it, and we are of the opin-
ion that their verdict is not without evidence sufficient here to
sustain it.   The question as to whether or not the plaintiff
waited a reasonable time for the promised assistance before at-
tempting, unaided, to alight from the train, under all the cir-
cumstances in proof, we think was for the jury.   It is not a
case where the facts are undisputed, and from which only one
conclusion can be drawn.

2.   Appellant objects to the following instruction.   "If
the jury find from the evidence that the plaintiff was a passen-
ger on the defendant's train for Kensett, and, on arriving at Bald
Knob, the conductor or agent called out the name of the station,
and directed the plaintiff to get off of said train for the purpose
of changing cars and getting on another train, which would
carry her to her destination, she had a right to rely on such ad-
vice or directions, provided she took no more risks in getting
off the train than a prudent person would have taken under the
same circumstances."   The objection urged is that it ignores
proof on the part of the appellant tending to show the special
arrangements made by plaintiff with both the conductor and
brakeman for assisting her off the train, and further that under
the instruction the jury are left to say "she took no more risks
in getting off the train than a prudent person would have taken."
The objection is not tenable for two reasons.   (1.)   The court pre-
sented the defendant's theory as to the special arrangement be-
tween plaintiff and the conductor and brakeman for assisting
her off the train in its ninth instruction asked by the defendant,
and modified and given as follows.   "9.   If the jury believe from
the evidence that defendant's employees in charge of the train on
which plaintiff was, before the train reached Bald Knob, told
plaintiff that she would be assisted off by them, or any one of
them, when the train should arrive at Bald Knob, and further
told her to wait in the car until he or they should come to as-
sist her, and further find that she did not wait for such assist-
ance, but got off the car by herself, and was injured in so get-
ting off, without having waited a reasonable time for such
assistance, you will find for the defendant."   (2.)   It was not
improper to tell the jury that plaintiff had a right to rely

upon the advice or direction of the conductor (although addressed to the passengers generally) to "get off the train," provided she took no more risk than a prudent person would have taken under the circumstances. Even if the conductor had told her to wait until he came to assist her off, she could not know but that he was then ready to give her the proffered assistance, and was there at the front end of the car for for that purpose. From his own testimony the jury could have found that he was at the steps assisting passengers off, when his attention was called to plaintiff's injury. There was proof from which the jury might have found that the conductor was near at hand when plaintiff attempted to alight, and failed to hear when "she called for some one to assist her in getting off," and therefore failed to assist her off.

There was no prejudicial error in giving instruction numbered 2, and the first clause of No. 4, asked by the plaintiff, with reference to the duty of defendant to provide ordinarily safe and sufficient platforms, and safe and convenient means of entrance to and departure from their trains; for, although the instructions might not have been properly worded, and, in view of the proof, might have been considered abstract, not having evidence upon which to base them, yet, if error, appellant cannot complain of it as being abstract, when it asked, and the court gave at its request, instructions bearing upon the same subject, numbered 2 and 4. Furthermore, the defendant requested the jury to find specially, "In what did said negligence consist," and the answer was, "In the conductor not using due diligence in assisting plaintiff from car, she having previously notified him that assistance would be necessary." This shows that the other matters were eliminated from their consideration.

Appellant complains of this instruction given at the request of plaintiff: "8. The jury are instructed that contributory negligence is a defense which must be affirmatively proved by the defendant, and the burden is upon them to show such negligence, and it must be established by a preponderance of the testimony." This is the law, as it applies to the appellant (defendant), in undertaking to sustain its plea of contributory

negligence.   If, however, the proof on the part of the plaintiff in the progress of the trial and the development of her case showed contributory negligence, the defendant (appellant) had the right to take advantage of that fact, and to rely upon such proof, just as though it had been introduced by it originally.   Where such is the case, the defendant is relieved of the necessity of introducing additional evidence on that point.   The court, however, did give an instruction on behalf of the defendant which fully meets the objection as follows:   "8. The court instructs the jury that contributory negligence is a complete bar to suits of this character, and if they find from the testimony that whatever injuries may have been received by the plaintiff were due to her lack of care, and the lack of the exercise of ordinary diligence on her part in alighting from said train, your verdict should be for defendant."   The instructions, taken together, declare the law pertaining to this phase of the case.   See *Texas & St. L. Ry.* v. *Orr*, 46 Ark. 182; *Little Rock & F. S. Ry. Co.* v. *Cavenesse*, 48 Ark. 106; *Little Rock, M. R. & T. Ry. Co.* v. *Leverett*, 48 Ark. 334; *Little Rock & F. S. Ry. Co.* v. *Eubanks*, 48 Ark. 461; *Park Hotel Co.* v. *Lockhart*, 59 Ark. 465.

The ninth* instruction was not prejudicial, and we find no error in the ruling of the court in giving the eleventh† at the request

---

*The ninth instruction given at plaintiff's instance is as follows:   "9. They [carriers] are required to provide all things necessary to the security of the passenger reasonably consistent with their business and appropriate to the means of conveyance employed by them."

†"11.   If the jury find from the evidence that the plaintiff, by reason of her physical disability, on account of her age or health, or both (which was apparent to the conductor or porter whose duty it was to look after the safety of the passengers), needed special assistance to enable her to leave the train in safety; being in that condition, she made the same known to the conductor or porter, or either of them, by requesting either of them to render her assistance in leaving the train, which they failed to render to her, or offered to do so within reasonable time; and if you further find that, if assistance had been rendered her by the conductor or porter, the injury would not have occurred, then your verdict should be for the plaintiff; provided, you further find that plaintiff took no more risk in getting off the car than a prudent person would under the same circumstances."

of plaintiff, nor in modifying, and giving as modified, the second‡ and ninth‖ asked by the defendant.

3.   Contributory negligence, under the evidence, was a question for the jury.

4.   Although objection was made to the manner of proving the character of the injury by expert witnesses, and although some reference was made thereto in arguing the question of the excessiveness of the verdict, we do not find that the point is reserved in the motion for new trial.

5.   While the verdict is large, yet we cannot say from the proof that it was excessive.

Affirm the judgment.

BUNN, C. J., dissenting.

---

‡"2.   In her complaint the plaintiff charges that the injuries of which she complains were caused by the defendant carelessly and negligently failing to provide sufficient lights and other means of egress, *or assistance within reasonable time,* from the car in which she was riding.  Unless you find from the evidence that the defendant was negligent in some one or more of the particulars referred to, and that such negligence caused the injuries to plaintiff, your verdict will be for the defendant."

‖"9.   If the jury believe from the evidence that defendant's employees in charge of the train on which plaintiff was, before the train reached Bald Knob, told plaintiff that she would be assisted off by them, or any one of them, when the train should arrive at Bald Knob, and further told her to wait in the car until he or they should come to assist her, and further find that she did not wait for such assistance, but got off the car by herself, and was injured in so getting off, *without having waited a reasonable time for such assistance,* you will find for the defendant."

The court's modifications of the second and ninth instructions, as asked by defendant, are indicated by italics.