71    367
f80    203
j82    510

## ARNOLD v. STATE.

### Opinion delivered May 9, 1903.

1.  FORGERY—TEACHER'S LICENSE.—Under Sand. & H. Dig., § 1595,
    providing that "if any person shall forge or counterfeit any
    writing whatever whereby fraudulently to obtain the possession
    or to deprive another of any money or property, * * * or if
    he shall utter and publish such instrument, knowing it to be
    forged or counterfeited, he shall, on conviction, he confined in
    the penitentiary not less than two nor more than ten years," one
    who uses a forged teacher's license to collect a school warrant,
    knowing it to be forged, is guilty of uttering a forged instrument.
    (Page 371.)

2.  SAME—SCHOOL WARRANT—DUTY OF TREASURER.—Where the county
    treasurer was notified by the county examiner that defendant was
    not licensed to teach, it was such treasurer's duty to ascertain
    whether defendant was licensed to teach before paying a school
    warrant issued to him.   (Page 371.)

3.  INSTRUCTIONS—DUTY TO PUT IN WRITING.—Where the judge had
    commenced to instruct the jury orally when he was requested to
    instruct in writing, he should have refrained from further oral
    instructions and reduced his instructions to writing before deliver-
    ing them.   (Page 372.)

Appeal from Conway Circuit Court.

WILLIAM L. MOOSE, Judge.

Reversed.

*Reid & Bruce* and *Sellers & Sellers,* for appellant.

A teacher's license is not the subject of forgery and uttering.
Sand. & H. Dig. § 1593; 6 Am. & Eng. Enc. Law (2d ed.), 288;
87 Ga. 429, 431. The act charged was harmless. 13 Am. & Eng.
Enc. Law (2d ed.), 1102. The court should have given written
instructions.  Const. art. 7, § 23; 47 Ark. 410; 51 Ark. 184; 11
Am. & Eng. Enc. Law (2d ed.), 261; 28 Ind. 394. Request made
when the court began instructing was in time.  76 Ind. 374; 3
Bush, 532; 47 Conn. 75; 11 Fla. 295; 13 Fla. 648; 61 Ga. 407;
47 Ark. 410.

*George W. Murphy, Attorney General,* for appellee.

There was no error in the failure to reduce the instructions to writing in this case, and the irregularity was at most a harmless one.   51 Ark. 184; 47 Ark. 407; 29 Ark. 250.

BATTLE, J.   The grand jury of Conway county indicted J. W. Arnold for uttering and publishing as true to W. D. Koonce, treasurer of said county, a certain forged and counterfeited teacher's license, purporting to be "issued to J. W. Arnold, bearing date September 24, 1901, numbered 102, grade numbered two, and signed by J. H. Reynolds, county examiner for Conway county, Arkansas," with the intent then and there to feloniously defraud, and obtain the property of, said W. D. Koonce, said Conway county, and School District No. 54 of said county, well knowing that the same· was forged and counterfeited.   He was convicted, and appealed.

The following witnesses testified, in behalf of the state, in part, as follows:

J. H. Reynolds testified:   "I am county examiner of Conway county, Arkansas.   In September, 1901, the defendant applied to me for examination, and failed to pass.   J. W. Swinger applied about the same time, passed the examination, and was granted license to teach, a second grade license.   I issued the license to him on the 24th of September, 1901.   It was numbered 102.   A short time after that I received a letter purporting to be from Swinger, which is lost, saying he had lost his license, and asking a duplicate.   I issued the duplicate, giving the same date, name, grade and number as the original, J. W. Swinger, grade No. 2, No. 102, date September 24, 1901, and signed it officially, addressed it to Swinger and mailed it.   Some time after this, the defendant came to my house, and said he understood that I had said he had no license to teach.   I told him that was correct.   He said he had a license, but did not know whether I wrote it or not, took it from his pocket and exhibited it to me.   It bore the number 102, issued September 24, 1901, grade No. 2.   It bore my signature as county examiner.   I told him it bore the number of the one issued to Swinger, and asked him to explain how that was.   He said he did not know, unless I had made a mistake.   It was genuine, with the single exception that the name Arnold showed an abrasion or erasure.   The name Arnold had been written over the abrasion or erasure.   I never issued a license to J. W. Arnold.   I keep a record

of all licenses issued. I informed the county treasurer that the defendant had no license to teach. All this, the examination of the defendant and the refusal of the license he asked, the examination and licensing of Swinger, the issuing of the duplicate and the conversation with the defendant, occurred in Conway county, Arkansas."

J. W. Swinger testified: "On the 24th of September, 1901, I was examined by J. H. Reynolds, county examiner of Conway county, and granted a second grade license to teach school. Reynolds, as examiner, issued it to me. It was numbered 102. Some time after the September examination, the defendant, J. W. Arnold, asked me, in Morrilton, to let him take my license and go into Pope or Perry county and have it countersigned, saying we would both then have work. I told him I could not do that. I understood that he had failed to pass the examination. He then asked me to let him examine my license, and I did so. He examined it for about five or ten minutes, I guess. About the last of September, 1902, he came to my school, and in the course of our conversation, I spoke of having heard of his being in the trouble. He said there were two ways out—pay out and run out. I at no time let him take and use my license. I only let him look at it. I never lost my license. I never at any time made application to Mr. Reynolds for a duplicate."

W. D. Koonce testified: "I am county treasurer of Conway county, Arkansas. I know the defendant. About the 1st of August, 1902, he came to my office with a school warrant, signed by the directors of school district No. 54, in Conway county, Arkansas. It was issued to W. H. Arnold. I told him that was not his name. He looked at it, said it was a mistake, and he would have it fixed. He took it, went out, came back with one of the directors, and erased the initials "W. H." and put in their stead "J. W." I then told him I could not pay it unless he would show me his license to teach. He said I had no authority to make that requirement. I told him I would do it anyhow. He said it would be impossible for him to get his license there that day. I told him next week would do, but that I would not pay the warrant until I saw the license. That evening he came back with the license and warrant. I then paid the warrant. I noticed it was a second grade license, signed by J. H. Reynolds as examiner. It looked like part of the name of the license had been erased. It looked like there had been an erasure, a name written and erased, and Arnold's

name put in the place of it. The warrant was for forty dollars, which I paid. Later on defendant presented another warrant to me for payment, which I refused. This all occurred in Conway county, Arkansas. I never saw the license but one time. The last I saw of it, it was in possession of the defendant."

Other witnesses testified. After the close of the testimony the court instructed the jury orally as follows:

"Gentlemen of the jury, this is a prosecution for uttering a forged instrument. The writing alleged to have been uttered as forged was a school teacher's license, or certificate of qualifications, issued by the county examiner of this county. The original or genuine license is alleged to have been issued to one J. W. Swinger, and the state insists that the name Swinger has been erased, and the name Arnold substituted therefor, and that the defendant exhibited this license with the substituted name therein as his own license to teach, and thereby procured a contract to teach a public school in district No. 54 of this county; also that, by so exhibiting said license as forged, he procured a warrant from the directors of said district on the treasurer of said county for the sum of $40; and also that, by so exhibiting said license as forged, he procured said warrant to be paid by the county treasurer, W. D. Koonce."

After this preamble the appellant requested the court to re-duce his instructions to writing before giving them to the jury, and the court refused to do so on the ground that the request was not made before he commenced instructing the jury; and over the objection of appellant instructed the jury orally as follows:

"Now, the defendant is not charged with forging this license, but with uttering or exhibiting it to W. D. Koonce, treasurer, and thereby procuring the payment of a school warrant for $40, and you are not to inquire whether or not he forged it, but it will be necessary for you to find that it was a forged writing when he so exhibited it and procured the money.

"If you find from the evidence that this instrument was a forged instrument, and that while it was so forged defendant, knowing it to be forged, exhibited it to the county treasurer for the purpose of inducing the treasurer to pay a school warrant issued to him by the directors of School District 54, and that he thereby procured the payment of said warrant, it will be your duty to find him guilty; and if you find him guilty you should say so by your verdict, and assess his punishment at not less than two and not more than seven years in the penitentiary.

"The indictment states·that the forged writing is in the possession of the defendant, and cannot therefore be set out in full by the grand jury.

"This allegation is sufficiently stated. You have the testimony of the grand jurors to the effect that the grand jury had evidence before them that the forged writing was in the possession of the defendant.

"If the grand jury had sufficient evidence before them to indicate that the instrument alleged to be forged was in the possession of the defendant, then it was not necessary for the instrument to be set out literally in the indictment.

"The defendant is presumed to be innocent, and the state must prove him guilty beyond a reasonable doubt.

"You are the judges of the weight and sufficiency of the testimony and of the credibility of the witnesses, and you are to take into consideration their manner of testifying, their means of knowing the facts to which they testify, the reasonableness or unreasonableness of· their statements, and the interest which they have, if any, in your verdict.

"If you have a reasonable doubt upon the whole case, you will return him not guilty."

After giving these instructions the court reduced one of them to writing as follows: "If the grand jury had sufficient evidence before them to indicate that the instrument alleged to be forged was in the possession of the defendant, then it was not necessary for the instrument to be set out literally in the indictment."

Appellant contends that a teacher's license "does not fall within any of our statutory definitions of instruments made the subject of forgery." This is not true. There is a statute which provides: "If any person shall forge or counterfeit any writing whatever, whereby fraudulently to obtain the possession or to deprive another of any money or property, or cause him to be injured in his estate or lawful rights, or if he shall utter and publish such instrument, knowing it to be forged and counterfeited, he shall, on conviction, be confined in the penitentiary not less than two nor more than ten years." Sand. & H. Dig. § 1595. This statute includes teacher's license.

It is contended that, even if the license was forged, the uttering of it to the county treasurer was harmless, on the ground that "it was not the duty of the treasurer to investigate the genuineness of a teacher's license before paying a warrant." This may

be true. But in this case the county treasurer was informed by the county examiner that appellant was not licensed to teach. He was thereby notified that the warrant for teacher's wages held by appellant was unlawfully issued, and should not be paid. For the statutes of this state provide that directors of school districts "shall not draw any order on the county treasurer for the payment of the wages of any teacher not licensed;" and that "any person who shall teach in a common school in this state, without a certificate of his qualification and his license to teach, shall not be entitled to receive for such service any compensation from revenues raised by tax or in any wise appropriated for the support of the common schools. Sand. & H. Dig. §§ 7051, 7071. With this notice from the officer whose duty it was to examine and license teachers, it was the duty of the treasurer to ascertain whether the appellant was licensed to teach before paying his warrant, and, finding that he was not, to refuse payment.

The county treasurer was unwilling and refused to pay the warrant of appellant until he exhibited his license. For the purpose of inducing him to do so, appellant handed to him as genuine a forged license for inspection, and thereby used it for an unlawful purpose, and obtained money to which he was not entitled.

The court should have given written instructions to the jury when appellant requested him to do so. The constitution provides that in jury trials the judges "shall reduce their charge or instructions to writing on the request of either party." Art. 7, § 23. This law is mandatory. When the appellant requested the judge to instruct in writing, he should have refrained from further instruction orally, and reduced his instructions to writing before delivering them to the jury. As it does not affirmatively appear to us that the error committed by the refusal or failure to instruct in writing was harmless, it is our duty to reverse the judgment of the trial court. *Mazzia* v. *State,* 51 Ark. 177, 184; *National Lumber Co.* v. *Snell,* 47 Ark. 407.

Reversed and remanded for a new trial.