St. Louis, Iron Mountain & Southern Railway Company

*v.* Leamons.

Opinion delivered April 29, 1907.

1. Carrier—passenger alighting from moving train—question for jury.—Where a passenger got off a moving train under the directions of the train porter, and in reliance upon his superior knowledge of the safety of the act, the questions of negligence and contributory negligence were properly submitted to the jury. (Page 507.)

2. Instruction—generality—harmless error.—A general instruction, in a personal damage suit against a carrier, that "carriers of passengers are held to the highest degree of care, and are responsible for the smallest negligence to such passengers" is not prejudicial where other instructions properly stated the issues in the case. (Page 507.)

3. Damages—excessiveness—remittitur.—Error of the court in instructing the jury that, in determining the damages for a personal injury, they might consider any debts incurred in attempting a cure, when the evidence of expense so incurred was too indefinite to sustain a verdict for substantial damages, was cured by remitting from the verdict the sum of $100, which appears to be reasonably sufficient to cover the amount allowed by the jury therefor. (Page 507.)

4. Same—decrease in earning capacity.—It was not error to submit to the jury, as an element of damages in a personal damage suit, plaintiff's decrease in earning capacity where the evidence, though meagre, showed a serious injury to his face, that a cheek bone was driven in against the ear, which caused partial deafness, and that his capacity for work was impaired. (Page 508.)

5. Same—excessiveness.—Evidence in a personal injury suit which shows that plaintiff suffered a serious injury to his face, from which he suffered pain more than two years, that a bone was driven in

against his ear, causing partial deafness, and that his earning capacity was decreased, was sufficient to sustain a verdict of $2,400 as damages. (Page 508.)

6. SAME—MENTAL PAIN.—Where the evidence showed that the plaintiff in a personal injury suit suffered a serious injury and great pain, that for many days the fear of death was upon him, and that his face was disfigured for a time, if not permanently, it was not error to instruct the jury that they might assess his damages at a sum that would be a just and fair compensation for his mental pain and suffering. (Page 508.)

Appeal from Union Circuit Court; *Chas. W. Smith,* Judge; affirmed.

*Tom M. Mehaffy,* for appellant.

1. Appellant's first request for instruction should have been granted. While it is true that a carrier of passengers is held to a very high degree of care, the obligation to act with prudence rests also upon the passenger; and while he may rely upon the judgment of persons in charge of the train, he can not do so where as in this case the one relied on is not in charge of the train, and where it is plainly open to his observation that such reliance will expose him to danger that a prudent man will not incur. 41 Am. & Eng. R. Cas. 117; 28 N. E. 338.

2. It was error to instruct the jury that "carriers of passengers by steam are held to the highest degree of care and are responsible for the smallest negligence to such passengers." They are held to the highest degree of care only as to the operation of trains, qualified so as to apply to their practical operation. 3 L. R. A. 74.

3. The fifth instruction was wrong. It excludes consideration of appellee's negligence, and is erroneous as to the measure of damages. There is no evidence on which to base that part of the instruction having reference to mental pain and anguish, nor any evidence on which to base the instruction as to expenses in debts incurred in effecting a cure, nor as to decreased earning capacity. 1 Blashfield's Ins. to Juries, § § 86, 91: 56 L. R. A. 338; 126 N. C. 712; 26 Ark. 513; 28 Ark. 198; 29 Ark. 151; 36 Ark. 641; 37 Ark. 57; 41 Ark. 282; 54 Ark. 336; 58 Ark. 454. To justify an assessment of damages for future or permanent disability, it must appear that continued or permanent

'disability is reasonably certain.   49 S. W. 687; 61 Wis. 536; 92 Wis. 56; 147 U. S. 571.

*W. M. Van Hook. R. G. Harper* and *Thornton & Thornton,* for appellee.

1.   That appellee got off of the train, being urged thereto by the only representative appellant had in the coach at the time, and that appellee was not negligent in so doing, are facts that are definitely settled by the special verdicts of the jury.   40 Ark. 327; Thompson on Trials, § 2652.   Whether or not one is guilty of negligence in getting off of a moving train is essentially a question of fact.   It is not negligence *per se* for a passenger to leave a moving train.   46 Ark. 437; 45 Ark. 322; 37 Ark. 526. In the absence of negligence on the part of appellee, the company is liable, notwithstanding he got off at the request of the negro porter.   *Ubi supra;* Law Rep. 9 C. P. 126; 44 Ark. 327; 81 S. W. 1068; Whittaker's Smith on Neg. 322; Ray on Imp. Duties, 364.

2.   Plaintiff's second instruction is sustained by repeated decisions of this court.   40 Ark. 298; 51 Ark. 459; 34 Ark. 613; 59 Ark. 180; 52 Ark. 524.   But if it was too general appellant should have offered a more specific one.   69 Ark. 637; 56 Ark. 394; 65 Ark. 260; 75 Ark. 325; 74 Ark. 436; 99 S. W. 75.   The highest degree of care which devolves on a railroad company to protect the persons of its passengers is not limited to the construction and equipment of the road, but includes also the services of the servants of the company.   50 S. W. 310; 28 N. E. 338.

3.   The fifth instruction is familiar law.   37 Ark. 525; 49 Ark. 182; 46 Ark. 437; Beach, Con. Neg. § 53; Hutchinson on Car. § 645; Whittaker's Smith on Neg. 305-6, notes.   There can be no exact measure of compensation for physical pain and mental anguish which is inseparable from it.   Proof of permanent injury and present pain authorizes recovery for future pain.   99 N. W. 693.   Mental pain may be inferred from physical suffering.   80 S. W. 856.   See, also, 69 Ark. 637.   An instruction, even though erroneous, would not prejudice appellant unless the verdict was excessive.   60 Ark. 558.

4. The verdict is right under the proof, and the jury and, trial judge, who saw the condition of plaintiff two years after the injury, being in a better position to estimate the extent of his injuries than the appellate court, the verdict ought not to be disturbed. 64 Ark. 237; 44 Ark. 331.

HILL, C. J. 1. This was an action for personal injury received in getting off a moving train, where the evidence tended to show that the passenger got off under the directions of the train porter, and in reliance on his superior knowledge of the safety of the act. The question of negligence and contributory negligence was properly submitted to the jury. It has frequently been held by this court that in cases like this the question is one to be determined by the jury under proper instructions. *St. Louis, I. M. & S. Ry.* v. *Cantrell,* 37 Ark. 519; *Little Rock & Ft. Smith Ry. Co.* v. *Atkins,* 46 Ark. 423; *St. Louis, I. M. & S. Ry Co.* v. *Baker,* 67 Ark. 531. There were special findings of the jury which settled the question of negligence and contributory negligence, and there was evidence sustaining those findings.

2. The second instruction, which is a general statement that "carriers of passengers by steam are held to the highest degree of care, and are responsible for the smallest negligence to such passengers," is criticised as being inapplicable to the facts. The court is unable to see where a general statement of this kind could be misleading to a jury, and it is not thought that under the instructions as a whole the jury could have taken this one as referring to the conduct of the porter of the train, and that he was held to the highest degree of care in advising appellant to jump, and that any slight negligence on his part would be sufficient upon which to base a cause of action, as the court in other instructions made clear the predicate for the cause of action.

3. Other criticisms of the instructions have been considered; but the instructions as a whole fairly present the law. Among the elements of recovery the jury are told that they might consider "any debts he may have incurred or paid out by attempting a cure, as well as any losses he may have sustained by reason of a loss of his earning capacity on account of said wound." The evidence showed that appellee was under the care of a doctor at Gurdon who dressed his face and sewed it up, and

after he got home he was at some expense there; but the amount of his expenses at either place is not shown. A verdict was rendered in favor of plaintiff for $2,500 as damages. After the verdict, appellee remitted $100 on account of the failure of the proof to show the amount of these items. It was error to enumerate the items of expense as something recoverable unless there was evidence thereof. But the evidence here shows that there was necessarily some expense incurred in dressing appellee's face and sewing it up at Gurdon, and some expense at home. It seems reasonable that $100 should have covered such items. At least, the court can not say that the circuit court erred in allowing the judgment to stand after the $100 was deducted therefrom on the theory that it would correct the error in allowing the question to go to the jury without the evidence being explicit as to the amount of such expenses.

As to the last element, of loss sustained by reason of decrease in earning capacity on account of the wound, the evidence is meagre, yet it is sufficient for this element to be enumerated in the charge. The evidence shows a serious injury to appellee's face, that the bone was driven in against the ear, which caused partial deafness. He was asked, "What effect, if any, has that had upon your capacity to labor and perform your ordinary vocation?" He answered, "I suppose, a right smart; I have not been able to do work since like I did before." There is nothing to show what he did before nor his earnings, but, taking the evidence as a whole and his physical condition, there was enough for the jury to consider a decrease in his earning capacity from the time of the accident to the time of the verdict. The verdict is moderate in view of the seriousness of the injury and the great pain attending it for so long a period.

4. The instruction is also criticised as containing an element for mental pain and anguish. The evidence shows a very serious injury, great pain, and for many days the fear of death was upon appellee by reason of his injuries; and he was still suffering pain some two years thereafter. It is not clear from the record whether he was permanently disfigured in his face. Certainly, he was disfigured for a time. There was no error in including the element of mental pain in the charge.

On the whole cause, the court is unable to find any reversible error, and the case is affirmed.

BATTLE, J., (dissenting.)  The court instructed the jury in this case that, if they found for the plaintiff, they should assess his damages "at a sum that will in 'their' judgment be a just and fair compensation for the mental and physical pain and suffering at the time of the injury and afterwards, including any mental anguish and mortification or any physical inconvenience he may suffer in the future by reason of the wounds received, *as well as any debts he may have incurred or paid out by attempting a cure, as well as any losses he may have sustained by reason of a loss of his earning capacity on account of said wound."* So much of the instruction as is in these words, "as well as any debts he may have incurred or paid out by attempting a cure, as well as any losses he may have sustained by reason of a loss of his earning capacity on account of said wound," should not have been given.  There was no evidence upon which to base it.  The only testimony on this point was that of the plaintiff.  He testified that he was "examined by a physician and had been to some expense, but does not know how much he expended while under the care of a doctor; that he was under the care of a doctor at Gurdon, who dressed and sewed up his face, and that after he got to El Dorado he was at some expense there;" that his injury "affected his capacity to labor and perform his ordinary vocation a right smart; that he had not been able to work much since he was injured, not like he did before."  There was no evidence of the amount of expenses he incurred on account of his injury, or of what he was able to earn before and since—of the extent it affected his earning capacity.

Of a similar instruction this court said in *Railroad Co.* v. *Barry,* 58 Ark. 205:  "The fourth instruction, as to the measure of damages, given for the appellee, is erroneous in this, that it told the jury they might consider as an element of the plaintiff's damages the past and prospective expenses of his sickness resulting from his injury, and allow such damages as in their judgment would be a fair and just compensation for the same, not exceeding the amount sued for.  The only evidence in regard to the expenses of plaintiff's sickness, caused by the injury is his own, which is as follows:  'I have paid the doctor all the money

I had, after selling everything I had, and still owe him.' How much this was is not shown. How then could the jury estimate it? They could not find the amount from the testimony, and there was therefore no evidence upon which to base this part of the instruction. It was calculated to mislead the jury, and make them think the damages were entirely at their discretion. How far it affected their finding we can not tell." And this court, on account of this error, reversed the judgment in that case. This court has often held that it is error to give an instruction to a jury where there is no evidence upon which to base it. *Johnson* v. *State,* 36 Ark. 242; *Little Rock & F. S. Ry. Co* v. *Trotter,* 37 Ark. 593; *Same* v. *Townsend,* 41 Ark. 382; *Burke* v. *Snell,* 42 Ark. 57; *Dickerson* v. *Johnson,* 24 Ark. 251; *Morton* v. *Scull,* 23 Ark. 289; *Owens* v. *Chandler,* 16 Ark. 651.

Under the Constitution and laws of this State, the appellant was entitled to a trial of its cause before a jury upon proper instructions in writing. It is, however, not entitled to a new trial on account of harmless errors, but is if the error is prejudicial. The law guards a litigant's rights in this behalf with great care. Courts can not follow the jury to their room, and ascertain to what extent they were governed by the error. Hence the law gives the litigant the right to a reversal and new trial, on account of the error, unless it affirmatively appears that it was not prejudicial. *Bizzell* v. *Booker,* 16 Ark. 329; *Magness* v. *State,* 67 Ark. 604; *St. Louis & San Francisco R. Co.* v. *Crabtree,* 69 Ark. 134; *Arnold* v. *State,* 71 Ark. 367; *Morris* v. *Nat. Bank,* 104 U. S. 625, 630; *Smith* v. *Shoemaker,* 17 Wall. 630; *Vicksburg & M. Railroad Co.* v. *O'Brien,* 119 U. S. 99; *Gilmer* v. *Higley,* 110 U. S. 50; *Derry* v. *Cray,* 5 Wall. 807.

The court in this case seems to think that the verdict was reasonable and fair, and therefore should be affirmed. That is not the test. According to the test given, the verdict of the jury and judgment of the court should be reversed. They were instructed to assess the appellee's damages at a sum that will in their judgment be a just and fair compensation for, among other things, "the debts he may have incurred or paid out by attempting a cure, as well as any losses he may have sustained by reason of a loss of his earning capacity." There was no evidence upon that point. What were they to conclude? Necessarily

that they could assess damages on account of such debts and loss of earning capacity without evidence. The damages suffered on account of loss of earning capacity may have extended through a lifetime. Who can tell how much the jury allowed for them? They were a great part of the damages suffered by him, and it is not reasonable to suppose that they, under the instructions of the court, did not enter largely into the verdict. How much we can not tell.

I think the judgment should be reversed, and the cause remanded for a new trial.

WOOD, J., concurs.